BRYAN, Judge.
 

 Lizabeth Reynolds Nichols (“the mother”) appeals a judgment granting the counterclaim of Jess Niles Nichols II (“the father”), in which he objected to the mother’s proposal to change the principal residence of the parties’ minor child. We affirm.
 

 The mother and the father divorced in July 2003. Incorporating the terms of the parties’ settlement agreement, the trial court awarded the parties “shared custody,” with the mother having primary physical custody and the father having visitation rights. The trial court also awarded the mother child support in the amount of $850 per month.
 

 In July 2005, the mother petitioned to modify the divorce judgment, seeking, among other things, to modify the father’s visitation rights so that the mother could relocate to Potomac, Maryland, with the child. Counterclaiming, the father objected to the mother’s relocating with the child, sought primary physical custody of the child, and sought an attorney’s fee.
 

 On July 5, 2006, the trial court received evidence ore tenus regarding the mother’s proposal to relocate the principal residence of the child and the father’s objection to that proposal. On August 22, 2006, the trial court entered an order in which it found that the mother had introduced sufficient evidence to rebut the initial eviden-tiary presumption imposed by § 30-3-169.4, Ala.Code 1975, that a change in the principal residence of the child was not in the child’s best interest and, therefore, that she had shifted to the father the burden of proving that a change in the child’s principal residence was not in the child’s best interest.
 
 [1]
 
 The trial court further found that the father had met his burden of proving that a change in the child’s principal residence was not in the child’s best interest. Based on those findings, the trial court granted the father’s counterclaim objecting to the mother’s changing the child’s principal residence.
 

 The mother then filed a motion to amend the trial court’s August 22, 2006, order. The trial court amended its August 22, 2006, order to correct a clerical error but denied the mother’s motion in all other respects. Subsequently, the trial court entered an order denying all pending claims, thus rendering the August 22, 2006, order a final, appealable judgment. The mother then appealed to this court.
 

 On appeal, the mother challenges the constitutionality of the Alabama Parent-Child Relationship Protection Act (“the Act”), § 30-3-160 et seq., Ala.Code 1975, arguing that the rebuttable presumption in § 30-3-169.4 that a change in the child’s principal residence is not in the child’s best interest impinges upon her right to due process and her right to travel.
 
 [2]
 
 However, this court has a duty to
 
 *493
 
 avoid addressing an issue regarding the constitutionality of a statute unless doing so is essential to the proper determination of the case.
 
 Kirby v. Anniston,
 
 720 So.2d 887, 889 (Ala.1998); and
 
 Lowe v. Fulford,
 
 442 So.2d 29, 33 (Ala.1983). In the case now before us, the trial court found that the mother had rebutted the presumption that a change in the child’s principal residence was not in the child’s best interest and had shifted to the father the burden of proving that a change in the child’s principal residence was not in the child’s best interest. Thus, the father did not prevail because of the presumption; he prevailed because he proved that a change in the child’s principal residence was not in the child’s best interest. Accordingly, the result would have been the same in this case even if the trial court had not applied the presumption. Therefore, a determination regarding whether the presumption is constitutional is not essential to the proper resolution of this case, and, for that reason, we decline to consider it.
 

 The mother also argues that the trial court erred by failing to require the father to meet the
 
 Ex pattie McLendon
 
 standard as a condition of granting his counterclaim objecting to the mother’s proposal to change the principal residence of the parties’ minor child.
 
 See Ex parte McLendon,
 
 455 So.2d 863, 865 (Ala.1984). However, the mother did not present that argument to the trial court. Therefore, we will not consider that argument.
 
 See Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992). Finally, the mother argues that the trial court erred in granting the father’s counterclaim objecting to the child’s relocation because, she says, the evidence did not support the trial court’s finding that the father had proved that a change in the child’s principal residence was not in the child’s best interest. Moreover, the mother contends that, in determining that issue, we should apply a de novo standard of review; however, because the trial court’s finding was based on evidence received ore tenus, we must apply the ore tenus rule in making that determination.
 
 See, e.g., Sankey v. Sanlcey,
 
 961 So.2d 896, 900-01 (Ala.Civ.App.2007). Furthermore, because the trial court received evidence ore tenus, “we must view ‘ “the evidence in the light most favorable to the prevailing part[y].” ’ ”
 
 Diggs v. Diggs,
 
 910 So.2d 1274, 1275 (Ala.Civ.App. 2005) (quoting
 
 Architectura, Inc. v. Miller,
 
 769 So.2d 330, 332 (Ala.Civ.App.2000), quoting in turn
 
 Driver v. Hice,
 
 618 So.2d 129, 131 (Ala.Civ.App.1993)).
 

 Viewed in that light, the evidence before the trial court established the following facts. The mother maintained her residence in Crestline, Alabama, a suburb of Birmingham, after the parties divorced in July 2003. Both parties subsequently remarried. The mother’s current husband (“the stepfather”) is an attorney who resides in Potomac, Maryland.
 

 The child, who was seven years old at the time of trial, has never resided anywhere other than Crestline. She has always attended church in the same area and has maintained the same friends her entire life. The child participates in various extracurricular activities, such as tennis, softball, and Girl Scouts. However, if the mother is allowed to move the child to Potomac, she plans to involve the child in similar activities in Potomac and to take the child to museums and historical sites in the Washington, D.C., area.
 

 The child attends an elementary school in the Mountain Brook school system,
 
 *494
 
 which the mother testified is one of the top 10 school systems in the United States, and has been progressing well academically. However, the mother testified that the school system the child would attend in Maryland, if the mother is allowed to move the child there, is also ranked among the top 10 school systems in the United States. Moreover, the stepfather’s six-bedroom house in Potomac is less than a mile from the school the child would attend if the mother is allowed to move the child to Potomac.
 

 The evidence established that the father, with the consent and encouragement of the mother, has visited with the child more than the minimum amount of time he is entitled to under the divorce judgment. For example, on Monday nights, the father and the child share a meal together and, on Wednesday nights, the father takes the child to a mall.
 
 [3]
 
 In addition, the father has contact with the child every day either in person or by telephone. The father has also volunteered at the child’s school, has eaten lunch with the child at her school, and has taken the child on trips with other family members.
 

 The child’s paternal grandparents, who live in Gadsden, are very involved in the child’s life. They periodically pick the child up from school, sometimes care for her when she is ill or school is not in session, attend the child’s dance recitals and sporting events, take the child to family reunions and on trips, and read to the child at her school. The child’s paternal aunt has regularly visited with the child, has planned parties for the child, and has accompanied the child on trips.
 

 The child visits her maternal grandmother, who lives in Dadeville, at least once a month and for an extended period during the summer. The child also visits two of her maternal uncles, who reside in Dadeville, on a regular basis. The mother admitted that the child’s extended family on both the maternal side and paternal side attend functions and activities in which the child participates and that the child is the center of attention for her extended family on both the maternal side and paternal side.
 

 The child has met the stepfather and several members of the stepfather’s family on a few occasions, but she does not have a close bond with them. None of the stepfather’s extended family members reside in Maryland; however, most of his family members reside within a two- to three-hour drive of one another. According to the mother, the stepfather’s closest family member, his brother, resides in Washington, D.C.
 

 The mother introduced a proposed visitation schedule based upon the child’s relocating to Maryland. According to that schedule, the mother proposed, among other things, that the father exercise visitation with the child in Birmingham one weekend every six weeks. The proposal provides that the mother would pay travel expenses, including paying for the child’s airfare. She also proposed extended visitations during the Christmas holidays and when the child has extended breaks from school. The mother testified that the child has flown six to seven times, but she admitted that the child has never flown alone. The mother also proposed that she arrange for an adult to accompany the child on flights until the child reaches the age of 14. According to the mother’s proposed schedule, the father would pay for travel costs if he chooses to visit the child in Maryland; the mother also proposed to reduce the father’s child-support obligation to offset the father’s travel costs. The proposed visitation schedule would also permit the paternal grandparents and the
 
 *495
 
 paternal aunt to visit with the child in the event they desire to travel to Maryland.
 

 The mother also proposed that she and the father install webcams
 
 [4]
 
 on their computers in order to facilitate communication between the father and the child. The father testified that he has never used a webcam and has never communicated with the child by e-mail.
 

 We conclude that the father introduced sufficient evidence to establish that a change in the child’s principal residence is not in the child’s best interests. He introduced evidence establishing that he, his family, and the mother’s family are all actively involved in the child’s life; that the child benefits greatly from their involvement in her life; and that that involvement would be significantly reduced if the mother moves the child to Potomac. At the same time, the father introduced evidence establishing that the involvement of the stepfather and the stepfather’s family in the child’s life would not compensate for the reduced involvement of the father, the father’s family, and the mother’s family in the child’s life. Therefore, we conclude that the evidence supports the trial court’s finding that the father had met his burden of proving that changing the child’s principal residence was not in the child’s best interest.
 

 In summary, we find no error in the trial court’s granting the father’s counterclaim objecting to the mother’s proposed change in the child’s principal residence.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Section 30-3-169.4, which is part of the Alabama Parent-Child Relationship Protection Act, codified at § 30-3-160 et seq., Ala. Code 1975, provides, in pertinent part:
 

 “In proceedings under this article there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party.”
 

 [2]
 

 . The mother also argues that the presumption impinges on her right to marry; however, she did not present that argument to the
 
 *493
 
 trial court. Therefore, that argument is not before us.
 
 See Andrews v. Merritt Oil Co.,
 
 612 So.2d 409, 410 (Ala.1992) ("This Court cannot consider arguments raised for the first time on appeal .... ’’).
 

 [3]
 

 . The divorce judgment grants the father visitation with the child on one weekday night during the weeks when he does not have weekend visitation.
 

 [4]
 

 .
 
 Merriam-Webster's Collegiate Dictionary
 
 1418 (11th ed.2003) defines a "webcam” as "a camera used in transmitting live images over the World Wide Web.”