THOMPSON, Presiding Judge.
Kevin J. Knight (“the father”) and Sarah J. Knight (“the mother”) were divorced by an August 29, 2008, judgment of the trial court. The divorce judgment incorporated an agreement reached by the parties. Pursuant to the divorce judgment, the parties shared joint legal and physical custody of their minor child.
On February 19, 2009, the mother filed a petition seeking to modify custody of the child, requesting permission to relocate to California with the child and seeking a modification of child support. The father filed an answer in which he objected to the proposed relocation and asserted counterclaims seeking an award of custody of the child and an award of child support.
The trial court conducted a hearing over the course of two days. On September 9, 2009, the trial court entered a judgment in which it awarded primary physical custody of the child to the mother, authorized the mother to relocate with the child to California, and modified the father’s child-support obligation. The father filed a postjudgment motion, and the trial court denied that motion. The father timely appealed.
The record indicates that the parties moved to Alabama some time before the birth of them child in October 2006. The parties’ testimony established that they each grew up in or near Santa Ynez, California, that they went to school there, and that they moved from the Santa Ynez area to Alabama in order for the father to work with his uncle in constructing houses in Alabama. The father’s testimony indicates that the initial plans to work with or for his uncle did not work out and that, thereafter, the father created his own construction business. The father and his business partner construct and remodel homes to sell to others.
The mother owned a clothing store until January 2009. The mother testified that she traveled to California monthly to purchase merchandise for her store and that she often took the child with her on those buying trips. The mother explained that she had a great deal of extended family in the Santa Ynez area and that the mother and the child visited family and friends when they went on buying trips.
The parties divorced in August 2008. The custody agreement incorporated into the parties’ divorce judgment provided that the mother have custody of the child for 7 of 11 days and for the father to have the child for the remaining 4 days of the 11-day period. The mother explained that *945 the parties anticipated that the father would have the child for two consecutive four-day periods when she traveled to California for her business. However, the mother testified that, after the divorce, the father did not exercise all the custodial periods available to him and that, on at least one occasion after the parties’ divorce, she had taken the child with her when she traveled to California. The mother submitted into evidence an exhibit documenting the dates on which she had had custody of the child, the dates on which the father had had custody of the child, and custodial days available to the father that he had not exercised. The mother testified that, after she filed her February 2009 complaint seeking authorization to relocate to California with the child, the father fully exercised his custodial time.
The father disputed that he had not fully exercised his custodial periods. The father stated that he had rescheduled some of the days he was to have the child but that he believed he had not missed any opportunity to have custody of the child.
After the parties moved to Alabama from California, the mother’s sister and parents, who had lived in the Santa Ynez area, also relocated to Alabama to be closer to the parties. The mother explained that her parents are attending college in Alabama in order to obtain their teaching certificates. The mother testified that her sister and the sister’s family had spent a great deal of time traveling between California and Alabama but that her sister and her sister’s family had recently returned to live in California.
The mother testified that she wanted to relocate with the child to California for several reasons. The mother testified that her business had been unprofitable and that she had sold the business. The mother stated that she had attempted to locate employment in Alabama but that her efforts had been unsuccessful. At the time of the hearing in this matter, the mother and the child were living in government-subsidized housing.
The mother testified that she had received an offer for a job in California with a salary of $48,000, plus commissions; the mother stated that she believed her annual income could be as much as $60,000 in that job. According to the mother, the job offer was a position in event sales for a winery. The mother explained that, in addition to the salary, the job was attractive because she would be required to work away from her house for only two days each week; the mother stated that she could work from home for the remainder of the time, which would enable her to spend more time with the child. The mother testified that she could rent a home in Santa Ynez for $500 per month from the parents of a long-term male friend.
The mother presented evidence regarding a Montessori preschool she planned for the child to attend on the days she worked away from her home. The mother stated that, although she had been satisfied initially with the church preschool the child has been attending, she believed that it was in the nature of a “day care.” The mother testified that she believed the child needed more educational opportunities, such as those available at the preschool in California. The mother had also identified a local charter school as a possible elementary school for the child when he reached school age.
The mother also testified regarding the great number of aunts, uncles, cousins, and friends she and the child had in the Santa Ynez area. The mother stated that the extended-family members could provide support if she needed help with the child.
*946 The mother also testified that she has facilitated, and will continue to facilitate, the relationship between the child and the father. It is undisputed that the child speaks on the telephone daily with the parent who does not then have custody of him. The mother testified that she had proposed a custodial arrangement to allow the father visitation with the child if she were allowed to relocate with the child. Pursuant to that proposed agreement, the mother would have the child for four consecutive weeks and the father would have the child for two consecutive weeks. The mother explained that that arrangement would result in the father having only six fewer days per year with the child than he is afforded under the custody arrangement specified in the divorce judgment. The mother also stated that the father often visits California to see friends and family and that he could exercise additional visitation with the child during those times. In addition, the mother proposed that the father use the Internet to have video-telephone conversations with the child.
The parties presented evidence regarding the cost of flying from Alabama to California, and they agreed that an adult would have to fly with the child, who was two years old at the time of the hearing, when he traveled to and from California, thereby increasing the transportation costs. The mother stated that the child enjoyed flying on an airplane. The mother testified that the trip normally took five to six hours, including time for a layover. The mother stated that a direct flight from Alabama to California took only four hours, but she stated that she had never taken a direct flight with the child. The mother explained that she believed the child would do better if he were able to leave the plane during a layover for exercise and a meal.
The father conceded that the mother was a good mother and that she has been the child’s primary caretaker. The father testified that he did not want the child to be removed from Alabama; the father stated that he intended to make Alabama his permanent home and that he wanted the child to be raised in Alabama. In addition, the parties agreed that the father and the child have a close relationship.
The father stated that, because he was self-employed, his schedule was flexible and he could meet the child’s needs. The father presented evidence indicating that the child had been attending a church day care or preschool while in Alabama and that the child could continue to do so until he reached school age. The father presented evidence concerning a private school he wanted the child to attend when the child reached school age.
The father also stated that, when necessary, he could leave the child in the care of the father’s mother, who lived nearby. The father admitted that the mother was concerned about leaving the child with the paternal grandmother, who has a felony drug conviction. However, the father stated that he would not leave the child with the paternal grandmother if he had any concerns about her ability to properly care for the child. The father also testified that the child was close to the father’s nine-year-old brother.
In addition, the father testified that the mother’s parents would be willing to help him with the child if necessary. The mother’s father testified, however, that he anticipated that he and the child’s maternal grandmother would return to California if the mother was allowed to relocate; he explained that the mother’s sister had already returned to California and that he and his wife wanted to be near their children and grandchildren.
*947 The father testified that he believed that the mother lived an extravagant lifestyle that was beyond her financial means. The mother alleged that the father had been controlling during their marriage and that she believed he was continuing to attempt to control her after their divorce. The father disputed that the mother could not find employment in Alabama, and he questioned whether she had truly attempted to do so. The father presented evidence indicating that one of the mother’s former employers had job openings for positions with salaries in the range of $25,000 to $40,000 per year. The operator of that business acknowledged that the mother had earned only $22,000 per year when she was employed with his business, and he stated that he was not offering the mother a $40,000 per year job.
The father indicated that he had traveled to the Santa Ynez area twice in the year since the parties’ divorce. We note that, on one of those trips, the father was accompanied by his girlfriend and that, during that trip, the mother and the child were also in California. The father conceded that he did not attempt to see the child in the five days he was in California during that trip. Rather, the father admitted that he spent much of that time following the mother, surveilling the home of the man with whom he suspects the mother is involved, and asking questions of the mother’s prospective employer.
At the close of the hearing in this matter, the trial court noted, with regard to the issues of custody and the proposed relocation:
“I will say this to both of you. This is one of those cases that judges hate. Two good people. Two good parents, and no good solutions, so whatever I decide is going to be tough. I will do my best, but there is not a good guy and abad guy....”
In addition to their evidence on the issue of custody and the proposed relocation, the parties also presented evidence regarding their earnings for the purpose of calculating child support. The mother’s evidence indicated that she anticipated earning a salary of $48,000 per year. The father testified that he earned in the range of $2,000 to $3,000 per month; the record does not indicate whether that estimate was gross income or net income. In response to discovery requests, the father indicated that he had earned $19,000 for the year as of May 2009.
In addition, the mother submitted into evidence the father’s bank statements. Those bank statements indicate that large amounts of money were deposited or transferred into the father’s bank accounts each month. The father admitted that between January and June 2009, approximately $150,000 had been deposited or transferred into his checking account. The father explained that many of those funds were used to purchase construction supplies for the construction or remodeling jobs on which he was working. The father testified that he does not know how much of that money he used for his personal expenses versus his business expenses. The father explained that he usually went through his banking statements only two times per year.
The mother submitted into evidence a list, compiled from the father’s banking statements, of the father’s expenditures that she maintained did not include construction expenses. The father did not dispute the mother’s calculations. The father stated, however, that many restaurant expenses reflected on the mother’s exhibit included costs for clients. The father’s nonbusiness expenses for the first six months of 2009, as calculated in the mother’s exhibit, averaged more than $9,700 per month.
*948 In its judgment in this matter, the trial court determined, among other things, that the mother’s income was $4,166.66 per month, which equates to an annual income of $50,000. The trial court found the father’s income to be $4,222.22 monthly, which is equivalent to an annual gross income of approximately $51,000.
On appeal, the father first argues that the trial court erred in awarding the mother primary physical custody of the child and allowing her to relocate with the child to California. The Alabama Parent-Child Relationship Protection Act (“the Act”), § 30-3-160 et seq., Ala.Code 1975, governs actions in which a parent seeks to relocate to another jurisdiction with a child of the parties. In his brief on appeal, the father asserts arguments pertaining to whether each party met his or her purported burden under § 30-3-169.4, Ala. Code 1975, which provides:
“In proceedings under this article unless there has been a determination that the party objecting to the change of the principal residence of the child has been found to have committed domestic violence or child abuse, there shall be a rebuttable presumption that a change of principal residence of a child is not in the best interest of the child. The party seeking a change of principal residence of a child shall have the initial burden of proof on the issue. If that burden of proof is met, the burden of proof shifts to the non-relocating party.”
In this case, after their divorce, the parties shared joint legal and physical custody of the child. See § 30-3-151(3), Ala.Code 1975 (“Joint physical custody does not necessarily mean physical custody of equal durations of time.”). Thus, the child “had two principal residences, one with the father and one with the mother.” Marsh v. Smith, 37 So.3d 174, 176 (Ala.Civ.App.2009).
With regard to reviewing a case in which a trial court has received ore tenus evidence, this court has stated:
“[Wjhere a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness. See Scholl v. Parsons, [655 So.2d 1060 (Ala.Civ.App.1995)]. ‘The presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate them credibility and demeanor.’ Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and to substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000); see also Ex parte Perkins, 646 So.2d 46 (Ala.1994).”
Clements v. Clements, 906 So.2d 952, 959 (Ala.Civ.App.2005) (emphasis added).
In this case, the record supports a conclusion that the mother has been the primary caretaker for the child, who was not yet three years old at the time the judgment in this matter was entered. The mother’s testimony indicated that she had available to her a good job in California that also allowed her flexibility to spend time with the child. The mother presented evidence indicating that the child could attend an educational preschool program in California. In addition, the mother presented evidence indicating that the child was familiar with California, that the child had spent a great deal of time there, and that there were a number of family members in California to support the mother in caring for the child. In addition, the mother’s father indicated that the mother’s parents would likely move back to California if the mother returned there.
The mother also presented evidence indicating that she had encouraged and as *949 sisted the child in maintaining his relationship with the father, and she testified that she would continue to do so. The mother submitted an exhibit demonstrating that, until she filed her complaint seeking a modification of custody and permission to relocate, the father had failed to exercise all of his custodial periods. The visitation schedule proposed by the mother if she were allowed to move, which was adopted by the trial court in its September 9, 2009, judgment, affords the father significant time with the child.
The trial court made no findings with regard to whether the parties had met their respective burdens under the Act with regard to the proposed change to the child’s principal residence. “[W]hen the trial court’s judgment does not contain specific findings of fact, this court must assume that the trial court made those findings of fact necessary to support its judgment.” Steed v. Steed, 877 So.2d 602, 603 (Ala.Civ.App.2003) (citing Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996)).
In Clements v. Clements, supra, this court rejected an argument that the trial court had impermissibly placed the initial burden under the Act on the nonrelocating parent. In doing so, this court concluded:
“In the instant case, the record contains evidence from which the trial court could have found that the mother had rebutted the presumption that the change in principal residence was not in the child’s best interest. The mother presented evidence indicating that she was the child’s primary caregiver; that she supported the furtherance of the child’s education; and that the move to New York would offer the child more cultural opportunities. Thus, under § 30-3-169.4 the burden shifted to the father to demonstrate that a change in principal residence is not in the best interest of the child.”
Clements v. Clements, 906 So.2d at 957.
Similarly, in this case, the mother presented evidence indicating the difficulties she had had obtaining employment in Alabama, the advantages for her and the child of moving to California, and her efforts to facilitate the relationship between the father and the child. The father presented evidence in support of his arguments opposing the proposed relocation. However, “because the trial court received evidence ore tenus, ‘we must view “ ‘the evidence in the light most favorable to the prevailing part[y].’ ” ’ ” Nichols v. Nichols, 4 So.3d 491, 493 (Ala.Civ.App.2008) (quoting Diggs v. Diggs, 910 So.2d 1274, 1275 (Ala.Civ.App.2005), quoting in turn Architectura, Inc. v. Miller, 769 So.2d 330, 332 (Ala.Civ.App.2000), quoting in turn Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993)). As stated earlier, it is the trial court, and not this court, that has the duty of assessing the credibility of those who testify and in determining the weight to be afforded to the evidence presented to it. Clements v. Clements, 906 So.2d at 959. This court may not base its judgment on its interpretation of the evidence presented to the trial court. Rather, it is well settled that “ ‘[i]t is our duty to affirm the trial court’s judgment if it is fairly supported by credible evidence, “regardless of our own view of that evidence or whether we would have reached a different result had we been the trial judge.” ’ ” Sankey v. Sankey, 961 So.2d 896, 901 (Ala.Civ.App.2007) (quoting Griggs v. Griggs, 638 So.2d 916, 918-19 (Ala.Civ.App.1994), quoting in turn Young v. Young, 376 So.2d 737, 739 (Ala.Civ.App.1979)). After reviewing the record on appeal and affording the trial court’s judgment the deference required by the ore tenus standard, we conclude that the record “contains evidence from which the trial court could have found that the mother *950 had rebutted the presumption that the change in principal residence was not in the child’s best interest.” Clements v. Clements, 906 So.2d at 957.
The burden then shifted to the father to demonstrate that the proposed relocation was not in the child’s best interests. § 30-3-169.4, Ala.Code 1975. The father cites Nichols v. Nichols, supra, in support of his argument that the trial court erred in allowing the proposed relocation. In that case, the trial court sustained the father’s objection to the mother’s proposed relocation with their seven-year-old child to Maryland. In doing so, the trial court found that the mother had rebutted the presumption that the relocation would not be in the child’s best interests, but it then found that, after the burden had shifted to the father, the father had demonstrated that the proposed move was not in the child’s best interests. This court affirmed the trial court’s judgment, citing the ore tenus rule, and noting that the record showed that
“[the father] introduced evidence establishing that he, his family, and the mother’s family are all actively involved in the child’s life; that the child benefits greatly from their involvement in her life; and that that involvement would be significantly reduced if the mother moves the child to Potomac. At the same time, the father introduced evidence establishing that the involvement of the stepfather and the stepfather’s family in the child’s life would not compensate for the reduced involvement of the father, the father’s family, and the mother’s family in the child’s life.”
Nichols v. Nichols, 4 So.3d at 495.
In this case, the father presented evidence indicating that his work schedule is also flexible, that the child could remain in his current preschool, and that the father has family in the area that can assist him in caring for the child. Although both parties have family in Alabama, the parties did not present evidence, as did the parties in Nichols v. Nichols, supra, of a particularly close relationship between the child and his extended-family members. Also, the father indicated that part of his support system was to be the mother’s parents; however, the mother’s father stated that he and his wife would likely relocate to be near the mother and child.
The father testified that he and the child share a close relationship and that the proposed move would prevent him from being involved in the future in the child’s daily activities, such as school and extracurricular activities. The father disputed the mother’s evidence indicating that he had not exercised all the custodial time available to him. However, as stated earlier, it is the trial court, and not this court, that has the duty of assessing the credibility of those who testify and in determining the weight to be afforded to the evidence presented to it. Clements v. Clements, 906 So.2d at 959. The evidence would support a conclusion that the father began regularly exercising his full visitation rights only after the mother initiated this action. Further, the father admitted that rather than visit the child when he, the mother, and the child were all in California at the same time, he spent that time following and investigating the mother.
In this case, the trial court determined that allowing the child to relocate with the mother served the child’s best interests. Implicit in that finding is a determination that the father had not rebutted the mother’s presentation of evidence in favor of the proposed relocation. See § 30-3-169.4, Ala.Code 1975; Ex parte Bryowsky, 676 So.2d at 1324 (holding that the appellate courts must presume that a trial court made the factual findings necessary to support its judgment); see also Ex parte *951 Blackstock, 47 So.3d 801, 806 (Ala.2009) (concluding that a finding that the mother had met the applicable burden of proof for a modification of custody was implicit in the trial court’s judgment). Viewing the evidence in a light most favorable to the mother, as the prevailing party, see Nichols v. Nichols, supra, we cannot say that the trial court’s determination was “so unsupported by the evidence as to be plainly and palpably wrong.” Clements v. Clements, 906 So.2d at 957. Accordingly, we must conclude that the father has failed to demonstrate that the trial court erred in determining that that the child’s best interests would be served by allowing the proposed relocation.
The father also challenges the trial court’s custody determination. The Act sets forth a number of factors for the trial court to consider in determining whether to modify custody once the trial court approves the proposed change in principal residence. Section 30-3-169.3, Ala.Code 1975, sets forth those factors and provides:
“(a) Upon the entry of a temporary order or upon final judgment permitting the change of principal residence of a child, a court may consider a proposed change of principal residence of a child as a factor to support a change of custody of the child. In determining whether a proposed or actual change of principal residence of a minor child should cause a change in custody of that child, a court shall take into account all factors affecting the child, including, but not limited to, the following:
“(1) The nature, quality, extent of involvement, and duration of the child’s relationship with the person proposing to relocate with the child and with the non-relocating person, siblings, and other significant persons or institutions in the child’s life.
“(2) The age, developmental stage, needs of the child, and the likely impact the change of principal residence of a child will have on the child’s physical, educational, and emotional development, taking into consideration any special needs of the child.
“(3) The increase in travel time for the child created by the change in principal residence of the child or a person entitled to custody of or visitation with the child.
“(4) The availability and cost of alternate means of communication between the child and the non-relocating party.
“(5) The feasibility of preserving the relationship between the non-relocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
“(6) The preference of the child, taking into consideration the age and maturity of the child.
“(7) The degree to which a change or proposed change of the principal residence of the child will result in uprooting the child as compared to the degree to which a modification of the custody of the child will result in uprooting the child.
“(8) The extent to which custody and visitation rights have been allowed and exercised.
“(9) Whether there is an established pattern of conduct of the person seeking to change the principal residence of a child, either to promote or thwart the relationship of the child and the non-relocating person.
“(10) Whether the person seeking to change the principal residence of a child, once out of the jurisdiction, is likely to comply with any new visitation arrangement and the disposition *952 of that person to foster a joint parenting arrangement with the non-relocating party.
“(11) Whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the change of principal residence of the child and the child, including, but not limited to, financial or emotional benefit or educational opportunities.
“(12) Whether or not a support system is available in the area of the proposed new residence of the child, especially in the event of an emergency or disability to the person having custody of the child.
“(13) Whether or not the proposed new residence of a child is to a foreign country whose public policy does not normally enforce the visitation rights of non-custodial parents, which does not have an adequately functioning legal system, or which otherwise presents a substantial risk of specific and serious harm to the child.
“(14) The stability of the family unit of the persons entitled to custody of and visitation with a child.
“(15) The reasons of each person for seeking or opposing a change of principal residence of a child.
“(16) Evidence relating to a history of domestic violence or child abuse.
“(17) Any other factor that in the opinion of the court is material to the general issue or otherwise provided by law.
“(b) The court making a determination of such issue shall enter an order granting the objection to the change or proposed change of principal residence of a child, denying the objection to the change or proposed change of principal residence of a child, or any other appropriate relief based upon the facts of the case.
“(c) The court, in approving a change of principal residence of a child, shall order contact between the child and the non-relocating party and telephone access sufficient to assure that the child has frequent, continuing, and meaningful contact with the non-relocating party and shall equitably apportion transportation costs of the child for visitation based upon the facts of the case.
“(d) The court, in approving a change of principal residence of a child, may consider the costs of transporting the child for visitation and determine whether a deviation from the child support guidelines should be considered in light of all factors including, but not limited to, additional costs incurred for transporting the child for visitation.
“(e) The court, in approving a change of principal residence of a child, may retain jurisdiction of the parties and of the child in order to supervise the transition caused by the change of principal residence of the child; to insure compliance with the orders of the court regarding continued access to the child by the non-relocating party; to insure the cooperation of the relocating party in fostering the parent-child relationship between the child and the non-relocating party; and to protect the relocating party and the child from risk of harm in those cases described in Section 30-3-167.”
The father cites Sankey v. Sankey, 961 So.2d 896 (Ala.Civ.App.2007), in support of his contention that the trial court erred in awarding the mother primary physical custody and allowing her to relocate to California with the child. In Sankey v. Sankey, supra, the custodial parent, the mother, sought to relocate with the children to another state because she planned *953 to marry a member of the armed forces who was to be stationed in Texas. The father opposed the proposed relocation and sought a modification of custody. In that case, the mother presented no evidence regarding any positive impact the move to Texas might have on the children, and the trial court concluded that the mother had not met her initial burden under the Act. Regardless, the trial court stated that, even if the mother had met her burden under the Act, it still would have granted the father’s claim seeking a modification of custody. 961 So.2d at 899. The evidence indicated that the children enjoyed a close relationship with the father and with their grandparents, who lived in the area; that the father had encouraged the children’s relationship with the mother but that she had attempted to interfere with the father’s relationship with the children; and that the mother’s behavior since the parties’ divorce had not been in the children’s best interests. Accordingly, citing the ore tenus rule and the presumption in favor of the correctness of the trial court’s judgment, this court affirmed the trial court’s determination that the mother had not rebutted the presumption set forth in the Act, and, again citing the ore tenus rule, it affirmed the modification of custody of the children. Sankey v. Sankey, 961 So.2d at 903.
In this case, the parties shared joint legal and physical custody of the child, and, therefore, there had been no prior custody determination. Accordingly, the trial court correctly applied the “best interest of the child” standard in determining custody. See Hovater v. Hovater, 577 So.2d 461, 464 (Ala.Civ.App.1990) (holding that the “best interest of the child” standard applies when there is no prior judgment granting primary physical custody to one parent). Our supreme court has recently reiterated that,
“[w]here, as in the present case, there is a prior judgment awarding joint physical custody, ‘ “the best interests of the child” ’ standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala.1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala.1988)). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ‘ “it [is] in the [child’s] best interests that the [judgment] be modified” ’ in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala.Civ.App.2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala.Civ.App.1987)).”
Ex parte Blackstock, 47 So.3d at 804-05.
We note that much of the evidence the parties submitted and discussed with regard to the issue whether the mother should be allowed to relocate with the child is also pertinent to the issue whether the trial court erred in refusing to award primary physical custody of the child to the father.
As stated earlier, the record supports a conclusion that the mother has been the primary caretaker for the child. The mother also presented evidence indicating that she had encouraged and assisted the child in maintaining his relationship with the father, and she testified that she would continue to do so. The mother testified that she wanted to move because of the job opportunity and to be close to her extended family in California. Both parties have ties to California, and the child has a great deal of extended family there. The mother presented evidence indicating that she had a good job opportunity that would allow her flexibility to spend a great deal of time with the child.
*954 The mother proposed a visitation schedule that would allow the father only six fewer days per year with the child in Alabama. The mother also testified that she would work with the father to allow him additional visitation during the times he visits California.
The father testified that he wanted to be able to take part in the child’s daily activities, which he could not do if the child lived in California with the mother. The father stated that he enjoyed a close relationship with the child, and he disputed the mother’s allegation that he had not exercised his full custodial rights before the mother initiated this action. However, the father admitted that he had spent five days in California following the mother and had not taken advantage of the mother’s offer to allow him to visit the child during that time. Thus, the trial court could have questioned the credibility of the father’s statements that he had fully exercised his custodial time with the child before the mother initiated this action and his denial that he was attempting to exercise control over the mother.
This case, like Sankey v. Sankey, supra, and Nichols v. Nichols, supra, involves the application of the ore tenus rule. In both of those cases, this court, citing the ore tenus rule, affirmed the trial courts’ judgments. The father insists that the evidence does not support the trial court’s judgment in this case. However, our supreme court has recently reiterated the limited nature of an appellate court’s review of a judgment reached by the trial court after the trial court received ore tenus evidence:
“As this Court Stated in Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996), quoted in part in Lamb [v. Lamb, 939 So.2d 918 (Ala.Civ.App.2006) ], in an ore tenus proceeding,
“ ‘[t]he trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993), set out the well-established rule:
“ ‘ “ ‘Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, ... and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow....””
“676 So.2d at 1324; see Lamb, 939 So.2d at 922; see also Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (‘[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.’ (citation omitted)).
“ ‘ “[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.” Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997) (quoting Ex parte Bryowsky, 676 So.2d at 1326). ‘Thus, appellate review of a judgment modifying custody when the evidence was presented ore tenus is *955 limited to determining whether there was sufficient evidence to support the trial court’s judgment.’ Cheek v. Dyess, 1 So.3d 1025, 1029 (Ala.Civ.App.2007) (citing Ex parte Patronas) (emphasis added). Under the ore tenus rule, where the conclusion of the trial court is so opposed to the weight of the evidence that the variable factors of a witness’s demeanor and credibility and the inferences that can be drawn from the evidence, even after considering those factors, ‘ “ ‘could not reasonably substantiate it, then the conclusion is clearly erroneous and must be reversed.’ ” ’ Cheek, 1 So.3d at 1029 (quoting B.J.N. v. P.D., 742 So.2d 1270, 1274 (Ala.Civ.App.1999), quoting in turn Jacoby v. Bell, 370 So.2d 278, 280 (Ala.1979) (emphasis added)).”
Ex parte Blackstock, 47 So.3d at 805-06 (first emphasis added).”
As the trial court noted at the close of the evidence, this is a close case. It is clear that both parties are good parents and that they each love the child. The trial court, after considering the ore tenus evidence, found that awarding custody to the mother and allowing the proposed change of principal residence was in the child’s best interests. Given our standard of review and the record on appeal, we cannot say that the father has demonstrated that there is no evidence to “reasonably substantiate” the trial court’s custody determination. Ex parte Blackstock, 47 So.3d at 806. Accordingly, we affirm that part of the trial court’s judgment awarding the mother primary physical custody of the child.
The father also argues that the trial court erred in increasing his child-support obligation from $225 per month to $690.50 per month. The father first takes issue with the trial court’s determination of his gross monthly income, which the trial court found to be $4,222.22. The father argues that he presented evidence indicating that his income was $2,000 to $3,000 per month. We note that in his post-judgment motion the father alleged that his gross monthly income was $3,167 per month.
The father is self-employed. Rule 32, Ala. R. Jud. Admin., defines “self-employment income” as follows:
“(a) For income from self-employment, rent, royalties, proprietorship of business, or joint ownership of partnership or closely held corporation, ‘gross income’ means gross receipts minus ordinary and necessary expenses required to produce this income, as allowed by the Internal Revenue Service, with the exceptions noted in subsection (B)(3)(b).”
Rule 32(B)(3)(a), Ala. R. Jud. Admin.
The father’s testimony concerning the issue of child support, for which he also asserted a claim seeking modification, could be interpreted as evasive. The father testified only that his monthly income from draws from his construction business averaged $2,000 to $3,000; he did not specify whether those figures represented gross income or net income. Other than his own testimony regarding his estimate of his monthly income, the father did not attempt to present any evidence regarding his income.
The mother presented evidence in an attempt to rebut the father’s testimony regarding the amount of his personal income. The mother submitted into evidence the father’s banking records, which demonstrate large deposits and expenditures for the father’s business and which also demonstrate the father’s personal expenditures. The mother’s evidence showed that the father paid an average of $9,700 a month in personal expenses in the *956 six months before the final hearing. It is clear that the father, in operating his business, has intermingled his business finances and his personal finances. The father did not present evidence, either for his business finances or for his personal finances, to counter the mother’s evidence pertaining to his income and expenditures. Likewise, on appeal, the father does not make any effort to explain the complicated evidence pertaining to his finances.
In Klapal v. Brannon, 610 So.2d 1167 (Ala.Civ.App.1992), the self-employed father claimed to have approximately $27,000 in annual income; however, his income-tax returns indicated a profit for his business of more than $50,000. This court rejected the father’s argument that the trial court had erred in considering the business’s gross income in determining his income for the purpose of calculating child support. The court noted that, “[wjhen earnings are from self-employment, ‘gross income’ means gross business receipts minus ordinary and necessary business expenses.” Klapal v. Brannon, 610 So.2d at 1170 (citing former Rule 32(B)(3)(I), which is now Rule 32(B)(3)(a), Ala. R. Jud. Admin.).
In Davidson v. Davidson, 643 So.2d 1001 (Ala.Civ.App.1994), the father, a self-employed electrician, testified that because the mother had the parties’ income-tax returns, he did not know his yearly income. The mother testified that the father’s income was $25,000. After a remand to comply with the Rule 32, Ala. R. Jud. Admin., child-support guidelines, the parties submitted income affidavits in which the father represented his gross income as being $1,000 per month, and the mother represented her income as being $947 per month. The trial court based its child-support determination on a finding that the father earned $2,000 per month and the mother earned $1,290 per month. This court affirmed the child-support award, concluding that “the trial court was within its discretion to determine the monthly gross income of the parties and that it correctly applied the Child Support Guidelines.” Davidson v. Davidson, 643 So.2d at 1004.
It is not clear from the record the exact method by which the trial court determined the father’s monthly gross income. However, the trial court had before it evidence pertaining to the income and expenditures of the father’s business. See Klapal v. Brannon, supra. Given that evidence and its observations of the father as he testified, the trial court could have determined that the father’s testimony concerning the amount of his income from his business lacked credibility. See Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999) (“The presumption of correctness [in favor of a trial court’s judgment pursuant to the ore tenus rule] is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor.”). Further, in considering the level of a support-paying parent’s income, the trial court may also consider any portion of that parent’s business income that is reinvested in the business rather than paid out to the parent as a draw. Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App.2006).
Given the evidence in the record on appeal and the father’s argument pertaining to his income for the purposes of calculating his child-support obligation, we cannot say that the father has demonstrated that the trial court exceeded its discretion in determining his gross monthly income. Davidson v. Davidson, supra; see also Neny v. Neny, 989 So.2d 565, 571 (Ala.Civ.App.2008) (“The trial court could have determined that, notwithstanding the mother’s testimony that she paid herself a sala *957 ry in the $30,000 to $40,000 range, her income, for purposes of Rule 32(B)(3)(a), was considerably higher.”).
The father has not asserted that, assuming that the trial court did not err in determining the amount of his gross monthly income, the trial court erred in its calculation of child support pursuant to the Rule 32, Ala. R. Jud. Admin., child-support guidelines. Our review reveals that, given the parties’ incomes as determined by the trial court in its September 9, 2009, judgment, as well as the undisputed costs of child care and health insurance for the child, the trial court properly calculated the father’s child-support obligation pursuant to those guidelines.
We note that the father asserts that the Rule 32 child-support guidelines allow for a deviation from those guidelines in situations in which “[extraordinary costs of transportation for purposes of visitation [are] borne substantially by one parent.” Rule 32(A)(1)(b), Ala. R. Jud. Admin, (emphasis added). The father contends that no allocation of the costs of transportation was included in the trial court’s determination of his child-support obligation. However, the father did not argue before the trial court that a deviation from the Rule 32 child-support guidelines was warranted, and he may not assert that argument for the first time on appeal. See Norman v. Bozeman, 605 So.2d 1210, 1214 (Ala.1992) (“Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court.”); and Smith v. Equifax Servs., Inc., 537 So.2d 463, 465 (Ala.1988) (“[An appellate court] will not reverse the trial court’s judgment on a ground raised for the first time on appeal.”).
Also, as the mother correctly points out in her brief submitted to this court, the trial court, as part of its September 9, 2009, judgment, ordered that the mother pay 60% of all costs associated with transporting the child for visitation with the father and that the father pay the remaining 40% of those costs. Thus, we cannot say that the father has demonstrated that he is the party required to “substantially [bear]” the cost of visitation-related transportation.
The father last argues that the trial court erred in failing to conduct a hearing on his postjudgment motion. Such a hearing is required when it is requested. Rule 59(g), Ala. R. Civ. P. However, the failure to conduct a hearing on a postjudgment motion is not necessarily reversible error. Kitchens v. Maye, 623 So.2d 1082, 1089 (Ala.1993).
“Harmless error occurs, within the context of a Rule 59(g) motion, where there is either no probable merit in the grounds asserted in the motion, or where the appellate court resolves the issues presented therein, as a matter of law, adversely to the movant, by application of the same objective standard of review as that applied in the trial court.”
Greene v. Thompson, 554 So.2d 376, 381 (Ala.1989). In this case, we have already determined that the father has failed to demonstrate error with regard to those issues that were presented to the trial court in his postjudgment motion. Accordingly, we decline to reverse the trial court’s judgment based on its failure to conduct a hearing on the father’s post-judgment motion. Kitchens v. Maye, supra; Greene v. Thompson, supra.
AFFIRMED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., concurs in part and dissents in part, with writing.