On September 21, 2004, Jonathan Lamb ("the husband") sued Patricia Lamb ("the wife"), seeking a divorce, alleging as grounds for the divorce an incompatibility of temperament and an irretrievable breakdown of the marital relationship. Although the wife argued at the trial that she should have custody of the couple's child because the husband had been abusive toward the wife during the marriage, the trial court's judgment awarded custody to the husband. The wife appeals, alleging that the trial court erred in making its custody award and in awarding the marital home to the husband.
The couple married in August 2000 and had one child born to them during their marriage. The wife has four other children, for whom she receives child support, from previous relationships. The husband has a child from a previous relationship. The wife alleged at trial, and several witnesses testified, that the husband was abusive toward her during their marriage. The wife stated that she had had a nervous breakdown and had been confined to a hospital as a result of the husband's abuse. Although she never testified specifically what that abuse was or when it happened, several witnesses for the wife elaborated upon the alleged abuse when they testified.
A neighbor who lived across the street from the couple stated that he called the police more than 10 times to report "incidents." On one occasion the neighbor saw the husband slap one of the wife's children from a previous relationship to the ground. Another time the neighbor heard the couple yelling inside their home; then, when the couple went onto the porch, he saw the husband knock the wife down and almost off the porch. On yet another occasion the neighbor called the "animal control" when he saw the husband punch a puppy in the face. However, the neighbor also admitted that the husband appeared to be a good father to the couple's child and that because the fights had started inside the couple's house he could not refute testimony indicating that the wife had started the fights by throwing things at the husband.
Barbara Pruitt, a former girlfriend to the husband before he was married to the wife in this case, testified that when she was in a relationship with the husband he was abusive toward her and, at times, toward their child. Pruitt also stated that the husband lied to the Department of Human Resources after they had separated. Despite the husband's efforts to the contrary, Pruitt stated, she has sole custody of their child and the husband has no right to visitation. However, Pruitt admitted that the husband had never been convicted of any of the abuse she alleged.
The wife's mother also testified, stating that she had witnessed the husband abuse the wife and tie cats to a ceiling fan. However, the husband indicated that his wife's parents should not be trusted to tell the truth by testifying that his wife's parents called his employer and falsely claimed that he was using drugs.
Additionally, there was other evidence on which the trial court could have relied in awarding the child's custody to the husband, including allegations that the parties' child and the wife's other children were poorly cared for by the wife. Most of the wife's children were alleged to have trouble in school and to have missed many days because of head lice. When questioned by the husband's attorney about her children's school performance and attendance, the wife's answers to questions were often simply "I don't know" or "I don't recall." Also, the wife stated that she had been recently hospitalized for a nervous breakdown and had been locked up at night in the mental ward. The husband testified that one of the wife's children *Page 921 
went to school one day in clothes in which the child had urinated. Furthermore, the husband submitted pictures to the trial court of the home maintained by the wife, which the husband alleged was "messy."
The husband also stated that he wanted custody of the child because he wanted the child to have the best education, clean clothes, and no lice. Additionally, there was evidence indicating that the husband helped the child with her homework, using flash cards every night to learn the ABC's. Although the husband works, he testified that he picks up the child from after-school care and that he hired a neighbor to take the child to school in the morning. The husband denied all the allegations of abuse toward the wife and the children.
The husband testified that he has worked at "Pemco Aviation World Air" for five years and that he earns $2,500 a month in wages. Although the wife claimed, and her mother testified, that the wife had made payments on the couple's marital home from the child-support payments she had received for her other children, the husband claimed that he paid for the marital home completely on his own.
The trial court's judgment awarded custody of the couple's child to the husband and awarded the couple's marital home to the husband as well. The wife moved the trial court for a new trial or, in the alternative, to amend its judgment. The trial court subsequently entered an amended judgment, noting that although there was evidence of a "skirmish" between the parties and between the husband and one of the wife's children, there was no evidence indicating that the husband had ever been violent toward the parties' child. The trial court also observed that the husband has a stable job and cares for his child's hygiene and education. In contrast, the trial judge noted, the wife is not employed, has four other children to care for, and appears "to be careless in her requirements concerning education and personal hygiene." Ultimately, the trial court decided that it was in the best interests of the child to be placed with the husband.
 "When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412
(Ala.Civ.App. 1993), set out the well-established rule:
 "`"Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala.Civ.App. 1989), and Vail v. Vail, 532 So.2d 639
(Ala.Civ.App. 1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala.Civ.App. 1990); Flowers v. Flowers, 479 So.2d 1257
(Ala.Civ.App. 1985)."'
 "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial *Page 922 
court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. See the cases collected at 3 Ala. Digest 2d Appeal Error § 846(5) (1993).
 "There are two different standards for reviewing custody arrangements. If custody has not previously been determined, then the `best interest of the child' standard is appropriate. Ex parte Couch, 521 So.2d 987 (Ala. 1988). . . .
 ". . . .
 "Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses . . . and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody."
Ex parte Bryowsky, 676 So.2d 1322, 1324-26
(Ala. 1996).
 "Furthermore, an appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow." Ex parte Foley, 864 So.2d 1094, 1099 (Ala. 2003) (citations omitted).
 "`"In an action between parents seeking an initial award of custody, the parties stand on equal footing and no presumption inures to either parent. The trial court's overriding consideration is the children's best interests and welfare."'" Smith v. Smith, 727 So.2d 113, 114
(Ala.Civ.App. 1998) (quoting Collier v. Collier, 698 So.2d 150, 151
(Ala.Civ.App. 1997), quoting in turn Graham v. Graham, 640 So.2d 963, 964
(Ala.Civ.App. 1994)).
However, as this court stated in Headrick v.Headrick, 916 So.2d 610, 613-614 (Ala.Civ.App. 2005):
 "An exception to the equal-footing principle concerns cases where domestic violence and abuse have occurred. In such cases, the Custody and Domestic or Family Abuse Act, Ala. Code 1975, § 30-3-130 et seq. ('the Act'), creates a rebut-table presumption against granting custody to a perpetrator of domestic violence or abuse. Section 30-3-131, Ala. Code 1975, provides:
 "`In every proceeding where there is at issue a dispute as to the custody of a child, a determination by the court that domestic or family violence has occurred raises a rebuttable presumption by the court that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of domestic or family violence. Notwithstanding the provisions regarding rebuttable presumption, the judge must also take into account what, if any, impact the domestic violence had on the child.'
 "Section 30-3-133, Ala. Code 1975, creates a similar rebuttable presumption that a minor child should reside with the parent who is not the perpetrator of domestic violence.
 "In Ex parte Fann, our Supreme Court held that the Act does not require a trial court to make a specific finding as to whether domestic violence has in fact occurred and that it does not require the trial court to state the reasons and findings supporting a conclusion that a parent has rebutted a presumption against custody. Ex parte Fann, 810 So.2d [631] at 638-39 [ (Ala. 2001) ]. See also Fell v. Fell, 869 So.2d [486] at 494 [ (Ala.Civ.App. 2003) ]." *Page 923 
In this case, the trial court received ore tenus testimony; therefore, this court must presume that the trial court's judgment is correct, and we will not reverse that judgment unless it is shown to be plainly and palpably wrong. Exparte Bryowsky, 676 So.2d at 1324 (citations omitted). In this case, although there was some evidence of domestic abuse, there was also evidence indicating that the wife recently had a nervous breakdown requiring her to be hospitalized and that she did not properly maintain the hygiene of the couple's child or of her children from previous relationships. When questioned about whether her children missed school because they had head lice, the wife could only answer "I don't know." Additionally, there was evidence indicating that the husband has a steady job, that he has never been abusive toward the child, and that he is concerned for the child's hygiene and education. Considering that the judgment refers to the conflicts the husband and the wife had as a "skirmish," it appears that the trial judge did not believe that the alleged abuse, if it actually occurred at all, rose to the level of abuse necessary to invoke the provisions of the Custody and Domestic or Family Abuse Act, Ala. Code 1975, § 30-3-130 et seq. Consequently, the rebuttable presumption that an abusive parent should not be granted custody of his or her child would not apply. Alternatively, because the trial judge characterized the alleged abuse as a "skirmish," it also appears that the rebuttable presumption that the husband is unfit to have custody of the parties' child pursuant to §30-3-130 et seq. could have been overcome by the other evidence presented at trial. Consequently, we affirm the portion of the trial court's judgment awarding custody of the couple's child to the husband.
Concerning the portion of the trial court's judgment awarding the marital home to the husband, we note that the ore tenus presumption that the trial court's judgment is correct applies. Hall v. Hall, 895 So.2d 299, 303
(Ala.Civ.App. 2004). As our supreme court held in Ex parteElliott, 782 So.2d 308, 311-12 (Ala. 2000):
 "A court has no fixed standard to follow in awarding alimony or in dividing marital property. Kather, the award or division need only be equitable and be supported by the particular facts of the case. . . . `[T]he [circuit] court should consider several factors, including the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.'"
(Quoting Nowell v. Nowell, 474 So.2d 1128, 1129
(Ala.Civ.App. 1985); footnote omitted.)
Additionally, "[t]he only limitation on a trial court's broad discretion in dividing the marital estate is that the property division and alimony award must be equitable under the circumstances of the particular case; the task of determining what is equitable falls to the trial court."Hall v. Hall, 895 So.2d at 303 (citing Cantrellv. Cantrell, 773 So.2d 487 (Ala.Civ.App. 2000)).
In this case, in which the husband and the wife disputed who paid for the marital home and in which the husband claimed that he paid for the marital home entirely on his own, the trial court was free to believe the evidence presented by the husband in making its judgment awarding the marital home to the husband. Additionally, the trial court could have also considered that, by awarding the custody of the couple's child to the husband, the court should ensure that the husband would have an adequate residence in which to live *Page 924 
and care for the child. Considering the evidence presented to the trial court supporting the trial court's judgment, and the ore tenus presumption, we cannot say that the trial court's award of the marital home to the husband was inequitable. Therefore, we affirm the judgment of the trial court.
AFFIRMED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur specially, with writings.
MURDOCK, J., concurs in the result, without writing.