PITTMAN, Judge.
Audrey M. Adams (“the wife”) brought an action in the Dale Circuit Court seeking the dissolution of her marriage to Terry Eugene Adams (“the husband”), as well as custody of the two children born of the marriage, an award of child support, and a division of marital property. An interlocu *1095 tory order was issued at the wife’s request awarding the wife custody of the children pendente lite and directing the parties to file income affidavits so that child support could be calculated. The husband filed an answer and a counterclaim seeking custody of the children, an award of child support, and a division of marital property. Neither party requested an award of alimony in the pleadings. The parties then filed income affidavits in response to the trial court’s interlocutory order; the husband averred in his response that his sole income consisted of non-employment-related “SSI” (i.e., disability) benefits and that those benefits were not to be considered in determining the husband’s gross income under Rule 32, Ala. R. Jud. Amin., pertaining to child-support awards.
After a brief ore tenus proceeding,[1] during which the trial court heard testimony from the wife, the husband, the parties’ older child, and a representative of a mental-health provider who had treated or counseled the husband, the trial court entered a judgment divorcing the parties, awarding the parties joint legal custody of the children (with primary physical custody of the children placed with the wife subject to the husband’s visitation rights), directing the wife to enroll the children in counseling, awarding the wife $247 in monthly child support, dividing the parties’ marital property, and reserving jurisdiction to award periodic alimony in the future. The husband filed a postjudgment motion challenging the trial court’s award of custody, that court’s inclusion of his disability benefits in determining the wife’s child-support award, the trial court’s decision to reserve the issue of periodic alimony rather than award alimony, and the property division fashioned by the trial court. Following the denial of that motion, the husband, acting through new counsel, appealed to this court, raising each of the issues that had been presented in his postjudgment motion.
“At the outset we note that, in reviewing the judgment by the trial court, we are governed by the well-established ore tenus rule. Under this rule, when the trial court has been presented evidence in a divorce case ore tenus, its judgment will be presumed to be correct and will not be set aside by this court unless it is plainly and palpably wrong or unjust.”
Brannon v. Brannon, 477 So.2d 445, 446 (Ala.Civ.App.1985).
The husband contends that the trial court erred in awarding primary physical custody of the parties’ children to the wife. The husband acknowledges the applicability of the “best-interests-of-the-child” standard of review in the setting of an initial award of custody and the trial court’s discretion, under Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981), to consider a wide variety of factors, including the gender, age, and characteristics of the children; the age, health, character, and responsiveness of the contestants; and each child’s preference (should that child be of sufficient age and maturity). However, he asserts that the wife committed acts of domestic violence against him so as to give rise to a presumption that an award of custody to the wife would not be in the best interests of the children under the Domestic and Family Violence Act (see Ala.Code 1975, § 30-3-131).
There was limited testimony adduced at trial regarding the parties’ competing custody claims. The wife testified that the parties’ children were 12 years old and 8 years old at the time of trial and that the children had lived with her during the pendency of the divorce action together with the children’s 17-year-old half broth *1096 er, who helps perform household chores and attends school in the same school system as the parties’ children. The wife also testified that she is available to assist with school homework after her work shift ends each afternoon. The parties’ older child testified at trial that it was his preference to remain with the wife and that he was happy where he was; that child also testified that the husband, following the parties’ separation, had objected to his hairstyle (which, judging from comparative photographic evidence, had lengthened) and that a recent moderate decline in his scholastic grades was attributable not to the parties’ separation but .to an increase in homework assignments from one particular teacher.
The husband testified that he was concerned by the changes in appearance of the parties’ 12-year-old child and by certain claimed escalations of objectionable behavior he had observed as to both children; the husband stated that the older child in particular had been consuming “vulgar” audio and video media, that he had talked in a disrespectful manner, and that he and the younger child had constantly fought and made threats against each other. However, on, cross-examination, the husband admitted that the children had behaved in a similar manner before the parties separated. The husband opined that counseling would be appropriate for the children (an opinion ultimately accepted by the trial court, which directed that the children undergo counseling in its judgment divorcing the parties). He further testified that he had been receiving disability payments since approximately 2000, two years into the marriage, because of anxiety-related panic attacks, but he admitted that he had “not had any major problem with panic attacks in years.” Another witness testified that the husband had been diagnosed by his mental-health professionals as suffering from “general anxiety disorder without manifestations” but added that the husband had not been prescribed any medication by those professionals for his condition.
The facts surrounding the husband’s domestic-violence assertion against the wife are somewhat unclear and are disputed. The husband testified that his principal concern about the wife’s having primary physical custody of the parties’ children was “[h]er temper”; he testified that the wife had been arrested for domestic violence against him on one occasion during which the wife had “grabbed” weapons and “got after me with them” before attempting to hurt herself and ingesting some unidentified medicine. The wife admitted that she had been convicted of domestic violence and had been placed on probation,[2] but she stated that she had attempted to assault the husband on only one occasion during the marriage when she had pushed the husband because, she said, he had blocked her ability to exit the home. Further, although the wife admitted that she had made suicidal gestures in the past because the husband had “kept fussing” at her and she could not see any other way to get away from the husband at the time, she testified that she had sought psychiatric help for her condition and had been informed that she was not at fault.
Although the evidence of record does not reveal the wife to be a perfect parent, we cannot conclude that the trial court erred in determining that placing the parties’ children in her primary physical custody would serve their best interests notwithstanding the husband’s contention *1097 regarding the wife’s past domestic violence. The wife’s testimony and the husband’s testimony, taken together, do not reveal that any domestic violence on the wife’s part, had any effect upon the children, and the lack of such evidence tends to counsel deference in favor of the trial court’s judgment in favor of the wife. See Enzor v. Enzor, 98 So.3d 15, 19 (Ala.Civ.App.2011). We further note the trial court’s ability under Devine to draw favorable inferences as to the wife’s character from her productive earning of wages during and after the parties’ marriage as compared to the husband’s reliance for over a decade upon unearned income stemming from a “general-anxiety” condition of questionable continued severity. Finally, we note the older child’s expression of a custodial preference in the wife’s favor — a factor that is entitled to much weight (see Enzor, 98 So.3d at 19) — and the presence in the wife’s home of a half sibling of the parties’ children, who should not be “perfunctorily separate[d]” by a custody judgment. See A.B. v. J.B., 40 So.3d 723, 730 (Ala.Civ.App.2009). We thus conclude that the placement of the parties’ children in the primary 'physical custody of the wife was within the trial court’s wide discretion notwithstanding any •prima facie statutory presumption against such a placement that arose under § 30-3-131.
The husband contends that the trial court erred in directing him to pay a sum of monthly child support based in part upon evidence that he was receiving $639 per month in government benefits. According to an evidentiary exhibit offered by the husband at trial, which was prepared by the federal Social Security Administration (“SSA”), the husband has received “disability benefits” from SSA since 2000; however, the SSA statement reveals that the monthly benefits of $639 currently being paid to the husband are actually Supplemental Security Income (“SSI”) payments and that that “payment amount may change from month to month if [the husband’s] income or living situation changes.” The nature of the husband’s payments is significant because, although “Rule 32(B)(2), Ala. R. Jud. Admin., includes disability payments in ... a party’s ‘gross income’ for purposes of calculating child-support obligations pursuant to the guidelines,” Hawkins v. Cantrell, 963 So.2d 103,105 n. 1 (Ala.Civ.App.2007), that rule includes SSI in a list of “means-tested public-assistance programs” whose payments are specifically excluded from “gross income.” Rule 32(B)(2), Ala. R. Jud. Admin.; see also Hawkins, 963 So.2d at 105 n. 1. Although, six years before the adoption of the Rule 32 child-support guidelines, this court had held in Ex parte Griggs, 435 So.2d 103 (Ala.Civ.App.1983), that “SSI benefits may be subjected to a claim for past-due child support payments” in an enforcement action, 435 So.2d at 104, any precedential value Griggs might otherwise have had with respect to a trial court’s determination of a parent’s income for purposes of calculating prospective child support was abrogated by the adoption of the guidelines, and “[u]se of the child support guidelines is mandatory in all actions filed after October 9,1989.” Gautney v. Raymond, 709 So.2d 1279, 1281 (Ala.Civ.App.1998).
The Form CS — 42 prepared by the trial court in determining the parties’ respective child-support obligations clearly shows that that court, in seeking to apply the Rule 32 guidelines, included the husband’s SSI benefits in determining his gross income and, thereby, in determining the amount the husband should pay to the wife as child support each month. In light of Rule 32(B)(2), we conclude that that court erred. The trial court’s judgment is reversed as to the husband’s child-support obligation, and the cause is remanded for *1098 that court to properly establish the husband’s child-support obligation by reference to the guidelines as pertinent to the husband’s “ ‘actual gross income [he] has the ability to earn’ ” (see Herboso v. Herboso, 881 So.2d 454, 457 (Ala.Civ.App.2003), quoting Rule 32(B)(1), Ala. R. Jud. Admin.) or, alternatively, to deviate from the guidelines if warranted (see Rule 32(A)(ii), Ala. R. Jud. Admin.).
The husband also contends that the trial court erred in failing to award him periodic alimony instead of reserving the issue. Assuming, without deciding, that the husband timely injected the issue of his potential entitlement to alimony into the case for the first time at the post-judgment stage despite having failed to seek alimony in his pleadings,[3] we cannot agree with the husband that the trial court erred to reversal. “The burden is on the party who is seeking periodic alimony to prove that a periodic-alimony award is warranted.” Taylor v. Taylor, 890 So.2d 151, 155 (Ala.Civ.App.2004). In this case, the husband did not itemize any monthly monetary needs in any evidentiary exhibit, nor does such an itemization appear within the 12 transcribed pages of his trial testimony; in contrast, evidence was adduced by the wife to the effect that the husband had not assisted her in making economic contributions to the expenses of the marriage in recent years apart from occasional contributions to paying electricity bills; thus, the trial court had no imperative duty to award periodic alimony on this record. See Weeks v. Weeks, 27 So.3d 526, 533 (Ala.Civ.App.2008), and Austin v. Austin, 678 So.2d 1129, 1131 (Ala.Civ.App.1996).
The husband contends that the trial court erred in dividing the parties’ property. At trial, the husband submitted an evidentiary exhibit listing 11 itemized classes or articles of personal and real property he was seeking to have awarded to him; the husband was awarded all of that property except for (a) one motor vehicle to which, during his trial testimony, he had waived any claim;[4] and (b) the parcel of land to which the parties’ marital residence, a “double-wide” mobile home, had been permanently affixed and (according to the wife’s testimony) could not be moved. The husband was awarded a 1999 model Ford F-15 truck principally used by the husband (and as to which the wife asserted no claim); he was also, over the wife’s objection, awarded a 2001 model Ford Escort automobile that, despite its earlier acquisition by the parties from a member of the husband’s family, had been borrowed against by the wife. Notably, the parties were directed by the trial court to “take the steps necessary to have the non-owner” of particular property items “released from the debts and security agreement,” indicating the trial court’s intent to award the 2001 Escort automobile to the husband free from all liens.
*1099 We cannot agree with the husband that the property division fashioned by the trial court was inequitable so as to fall outside the trial court’s discretion. There was disputed evidence presented at trial concerning the contributions of the parties to the purchase of the land to which the mobile home was permanently affixed, with the husband testifying that the land had been purchased using only a lump-sum payment of his SSI benefits and the wife testifying that the land had been purchased using both the husband’s benefits and income earned by the wife. The trial court could properly have determined that the wife had contributed to the acquisition of the land upon which the marital residence sat and that the wife, who had been entrusted with the primary physical custody of the children, had need of both that residence and the land upon which it was situated so as to “ensure that [she] would have an adequate residence in which to live and care for the [children].” Lamb v. Lamb, 939 So.2d 918, 923-24 (Ala.Civ.App. 2006). Further, the husband was awarded every automobile that he both claimed in his evidentiary exhibit and sought in his testimony.[5] The trial court could properly have deemed its property division to be equitable under the facts of. this case.
Based upon the foregoing facts and authorities, the trial court’s judgment is reversed as it pertains to child support; in all other respects, that judgment is affirmed. The cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMAS and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, with writing.
MOORE, J., concurs in the result, without writing.

. The trial transcript consists of only 52 pages of testimony.

. No record of any trial or judgment in any criminal matter involving the wife was placed in evidence.

. But cf. Hughes v. Hughes, 500 So.2d 1140, 1141 (Ala.Civ.App.1986) (reversing award of periodic alimony to spouse who made no request therefor; because parties’ economic evidence was referable to another disputed issue, alimony issue could not be said to have been tried by consent).

. The record reflects that that vehicle, a Ford Mustang convertible automobile dating from the 1990s, had been purchased by the wife using refunded income-tax withholdings that, the trial court could properly have inferred, had come from her wages and not the husband's SSI benefits (which are not subject to federal income tax, see Dep't of the Treasury, Internal Revenue Serv., Publication 915, Social Security and Equivalent Railroad Retirement Benefits, p. 1 (2013); on the date this opinion was released, this document could be found at: http://www.irs.gov/pub/irs-pdf/p9I5. pdf).

. Although the husband has asserted, without citation to any evidence presented at trial, that he does not yet have possession of the 2001 Escort automobile because it has been seized by creditors of the wife, we would note that the trial court has the inherent authority, in appropriate postjudgment proceedings, to enforce, against the wife, its award of the 2001 Escort automobile to the husband. See generally Grayson v. Grayson, 628 So.2d 918, 919-20 (Ala.Civ.App.1993).