THOMPSON, Presiding Judge.
Michaelle Nelson ("the mother") and Cortney Antwan Maddox ("the father") were divorced by a judgment of the Lee Circuit Court. In December 2013, the trial court entered a modification judgment in which it, among other things, awarded the parties joint physical and legal custody of their minor child and ordered that the *1180 father pay $200 per month in child support.[1]
On April 19, 2017, the mother filed a petition seeking to modify the father's child-support obligation. The mother signed her petition as a pro se litigant, but that petition includes the name of an attorney representing the Lee County Department of Human Resources ("DHR"). The record indicates that the mother had asked DHR for assistance in obtaining an increase in child support and that DHR had advised the mother to seek the modification of the father's child-support obligation. The action was initially heard by a referee who, in a December 18, 2017, order, stated that the matter should be heard by the trial court.
The trial court conducted an ore tenus hearing at which both parties appeared pro se. The attorney for DHR appeared at the hearing, apparently for the limited purpose of determining the father's child-support obligation, although DHR was not a party to the action. On February 1, 2018, the trial court entered a judgment in which it, among other things, modified custody to award custody of the child to the father and ordered the mother to pay child support.[2] The mother, then represented by an attorney, filed a timely notice of appeal on March 13, 2018.
The record reveals the following pertinent procedural history and facts. The attorney for DHR explained to the trial court that the referee had "bumped" the action to the trial court without making a determination because, the attorney explained, when the parties were before the referee, the father argued that the mother had moved with the child to Georgia in violation of an order of the trial court and that his visitation had been curtailed as a result. For that reason, the attorney for DHR stated, the referee had concluded that, because there were other issues besides child support that needed to be resolved between the father and the mother, the action should be resolved by the trial court. The parties presented evidence regarding the issues of child custody and child support. The child was eight years old at the time of the hearing in this matter.
The record demonstrates that, shortly after the entry of the December 2013 judgment, the mother announced an intention to relocate with the child to the Atlanta, Georgia, area. The father filed in the trial court an objection to that move. The trial court entered an order declining to grant permission for the mother to relocate to Georgia with the child; that order is not contained in the record on appeal, but it is clear that, in resolving this action, the trial court referred to that order. Regardless, the mother relocated with the child to Georgia. In response to questioning by the trial court, the father testified that he could not afford to pay court fees and attorney fees to continue to fight the mother's refusal to return the child to Alabama. The father presented evidence, however, indicating that he traveled to Georgia several *1181 times each month to retrieve the child for visitation. The father's testimony was that he returns to Alabama with the child to visit at his home and so that the child can see extended family who live near the father's home. The father also presented evidence concerning the mother's care of the child, his care of the child, their respective homes, and his desire for an award of custody.
The mother, and the attorney for DHR, sought to modify the father's child-support obligation based on the amount of time the child lived with the mother due to the mother's unauthorized relocation to Georgia. The mother did not seek a modification of the joint-custody award set forth in the December 2013 judgment.
Initially, we note that, buried in her argument on another issue, the mother briefly questions the trial court's jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975, to modify custody of the child. The mother points out that, because the child has lived primarily in Georgia with her for the last four years, Georgia is the child's home state. See § 30-3B-102(7), Ala. Code 1975 (A child's "home state" is "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."). The mother relies solely on her argument that Georgia is the child's home state, and she makes no argument applying the provisions of the UCCJEA.
In its February 1, 2018, judgment, the trial court specifically determined that it retained jurisdiction over the action. With regard to maintaining jurisdiction over a custody matter, the UCCJEA provides:
"(a) Except as otherwise provided in Section 30-3B-204, [Ala. Code 1975,] a court of this state which has made a child custody determination consistent with Section 30-3B-201 or Section 30-3B-203[, Ala. Code 1975,] has continuing, exclusive jurisdiction over the determination until:
"(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
"(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state."
§ 30-3B-202, Ala. Code 1975. The Official Comment to § 30-3B-202 explains, in pertinent part, the requirement that a child and one parent have a "significant connection" with Alabama in order for Alabama courts to retain continuing jurisdiction over the issue of custody of the child:
"1. If a parent or a person acting as a parent remains in the original decree state, continuing jurisdiction is lost when neither the child, the child and a parent, nor the child and a person acting as a parent continue to have a significant connection with the original decree state and there is no longer substantial evidence concerning the child's care, protection, training and personal relations in that state. In other words, even if the child has acquired a new home state, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the 'substantial connection' jurisdiction provisions of Section 201 are met. If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated *1182 that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist."
(Emphasis added.)
A portion of the Alabama Parent-Child Relationship Protection Act ("the Act"), §§ 30-3-160 through -169.10, Ala. Code 1975, provides that a child maintains a significant connection with this state when the parents have previously been awarded joint legal and/or joint physical custody and one parent remains in Alabama. Specially, the Act provides:
"(b) Where the parties have been awarded joint custody, joint legal custody, or joint physical custody of a child as defined in Section 30-3-151, [Ala. Code 1975,] and at least one parent having joint custody, joint legal custody, or joint physical custody of a child continues to maintain a principal residence in this state, the child shall have a significant connection with this state and a court in fashioning its judgments, orders, or decrees may retain continuing jurisdiction under Sections 30-3B-202 to 30-3B-204, [Ala. Code 1975,] inclusive, even though the child's principal residence after the relocation is outside this state."
§ 30-3-169.9(b), Ala. Code 1975. The most recent custody judgment between the parties in this case awarded the parties joint legal and joint physical custody of the minor child. The father lives and works in Alabama, and the child often visits him in Alabama. Thus, under the facts of this case, and given provisions of the Act, the child has maintained a "significant connection" to Alabama such that the trial court had continuing, exclusive jurisdiction under the UCCJEA to rule on the father's claim for a custody modification. § 30-3-169.9(b).
The mother also sets forth a different argument as to why, she says, the trial court did not have jurisdiction to consider the issue of a custody modification. She contends that, because the father did not file a pleading seeking the modification of custody of the child, either as a counterclaim in this action or by seeking to initiate a new action, the trial court lacked jurisdiction to modify custody of the child. The mother cites no supporting legal authority for the proposition that the trial court lacked jurisdiction to consider a claim that was not specifically pleaded by a party. In fact, a claim may be tried pursuant to the implied consent of the parties. See Rule 15(b), Ala. R. Civ. P. ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").
In A.L. v. S.J., 827 So.2d 828 (Ala. Civ. App. 2002), the paternal grandmother of a child sought to intervene in a custody dispute between the child's parents, but she asserted no claim in the action seeking an award of custody of the child. In her testimony in that case, however, the paternal grandmother made a request for an award of custody, and neither parent objected. This court held that the issue of the paternal grandmother's request for custody of the child had been tried by the implied consent of the parties. A.L. v. S.J., 827 So.2d at 833.
Similarly, in this case, the father, in proceeding in the trial court, sought an award of custody of the child and presented evidence in support of that request for custody. The mother did not object to the trial court's consideration of the issue of the custody of the child. We conclude that the issue of the father's claim seeking custody of the child was tried by the implied consent of the parties. Rule 15(b) ; A.L. v. S.J., supra. Accordingly, we cannot say that the mother has demonstrated that the trial court was without jurisdiction to consider *1183 the father's claim seeking to modify custody or that it erred in considering that claim.
The mother also argues that the trial court applied an incorrect standard in modifying custody of the child. We note that, in making that argument, the mother cites and purports to quote from the December 2013 custody judgment that is not contained in the record on appeal. The mother also contends that the trial court did not have jurisdiction to enter that judgment because, she claims, the father did not pay the requisite filing fees in that earlier action. The record contains no documentation or other evidence to support the mother's assertions with regard to that 2013 judgment. It was the mother's burden to ensure that the record on appeal contains any evidence necessary for a reversal. Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d 938, 942 (Ala. 1997). Further, the mother did not seek to set aside the December 2013 judgment on that basis, and, therefore, that issue was not before the trial court, has not been determined, and is not properly before this court.
In one part of her brief, the mother alleges that the February 1, 2018, judgment modified a judgment awarding her "sole physical custody" of the child; in making that argument, she appears to be intentionally disregarding the December 2013 judgment based on her argument to this court that the trial court lacked jurisdiction to enter that judgment. However, given the mother's failure to challenge the December 2013 judgment, we must consider the December 2013 judgment to be the most recent judgment concerning custody. It is undisputed that that judgment awarded the parties joint custody of the child, and any claim seeking to modify that judgment must be determined applying the "best interests of the child" standard. Ex parte Couch, 521 So.2d 987 (Ala. 1988) ; Ex parte Blackstock, 47 So.3d 801, 804 (Ala. 2009) ("Where, as in the present case, there is a prior judgment awarding joint physical custody, ' "the best interests of the child" ' standard applies in any subsequent custody-modification proceeding." (quoting Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994), quoting in turn Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988) ) ).
It is not clear from the February 1, 2018, judgment whether the trial court used the Couch best-interests standard or the more stringent custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), in reaching its decision to modify custody. However, even assuming that the trial court incorrectly applied the McLendon standard, we must conclude that, because that custody-modification standard is more stringent than the Couch best-interests standard, any error in applying the McLendon standard would be harmless. Rule 45, Ala. R. App. P.; I.M. v. J.P.F., 668 So.2d 843, 845 (Ala. Civ. App. 1995).
The mother also argues that the basis for the change in custody is not supported by the record, i.e., she contends that the evidence does not warrant a change in custody. In modifying custody of the child, the trial court found, in part:
"This Court previously ordered that each of these parties have visitation with the child on a substantially equal basis with each party having the child half of the work-week and rotating weekends. Subsequently, the mother announced an intent to move to the Atlanta, Georgia, area which the father objected to. The Court issued an order declining to grant the mother permission to move the child's residence further from her father. It is now clear that despite all of that, the mother has kept the child in Cumming, Georgia, diminishing the *1184 child's ability to have regular ongoing contact with her father ....
"... The Court heard testimony from both sides in regards to all of th[e] issues. The mother remains obstinate and dismissive of the importance of this child's father."
The mother contends that a change in the custodial parent's residence does not, in itself, warrant a modification of custody; she cites Vail v. Vail, 532 So.2d 639 (Ala. Civ. App. 1988), in support of that argument. In that case, the mother, who was the custodial parent, relocated to Georgia with her new husband and the parties' minor children. The father sought to modify custody of the children because that relocation had decreased the time he was able to spend with the children. The trial court, applying the McLendon standard, denied the father's modification petition, and this court affirmed.
Vail v. Vail, supra, is distinguishable from this case, however. First, that case was decided before the 2003 enactment of the Act. Under the Act, a custodial parent's proposed relocation away from the noncustodial parent remains, as it was before the Act, a factor that a trial court may consider in a custody-modification action, see Clements v. Clements, 906 So.2d 952, 958 (Ala. Civ. App. 2005). The Act also requires that a trial court consider the various ways in which the proposed relocation might impact the child's interactions with the noncustodial parent. See § 30-3-169.3, Ala. Code 1975 (setting forth those factors).
Further, unlike in Vail v. Vail, supra, the mother in this case was not the custodial parent, i.e., she did not have sole physical custody of the child. Rather, the record indicates that the December 2013 judgment awarded the parties in this case joint legal and joint physical custody of the child. Thus, as already explained, the appropriate custody-modification standard in this case was the "best interests of the child" standard set forth in Couch, supra.
The mother contends that the trial court's findings that she had defied its previous judgments and had diminished the child's contact with the father were not sufficient bases for the modification of custody. However, the father presented evidence indicating that the mother had repeatedly failed to work with him concerning visitation and that she had frequently denied him visitation or had changed plans in such a way that it affected his visitation. On one such occasion, the mother refused to allow the father to take the child to his family's reunion because, she said, the child had a gymnastics lesson. The father also testified that he regularly traveled several hours to exercise his visitation with the child and that the mother refused to meet him to lessen the time he spent traveling to visit the child. We note that the trial court's comments indicate that the December 2013 judgment provided that the parties were to take turns transporting the child to the other parent when custody was transferred.
The mother testified that, while living with her in Georgia, the child has made good grades and has been active in competitive gymnastics. The father presented evidence, however, indicating that the mother lives more than an hour from her place of employment. He stated that the child, who is 8 years old, and her half brother, who is 13, must prepare themselves for school and catch the bus each morning after the mother leaves for work. The father testified that the child had informed him that, when she leaves the school bus in the afternoon, she is typically alone at the mother's home until around 5:00, when her half brother arrives home. The mother disputed that testimony. She stated that the child is either with a sitter *1185 in the afternoon or that she stays with a friend until her half brother arrives home, and that the two children then go home together.
The father presented evidence indicating that, before the mother relocated, he turned down a promotion because it would require him to work a shift that would not allow him to pick up the child from school. The record indicates that the father was still working his regular shift at the time of the hearing.
We note that our courts have held, in cases involving the more stringent McLendon standard, that a visitation dispute, alone, may not support a modification of custody. Kelley v. Akers, 793 So.2d 821, 826-27 (Ala. Civ. App. 2001) ; Vick v. Vick, 688 So.2d 852, 856 (Ala. Civ. App. 1997). However, this court has affirmed a custody modification in a case in which the facts demonstrated that, rather than the existence of a mere visitation dispute, one parent had, or had attempted, to interfere with the child's relationship with the other parent by minimizing contact between them. C.J.L. v. M.W.B., 879 So.2d 1169, 1180 (Ala. Civ. App. 2003).
Our supreme court has explained:
"Where, as in the present case, there is a prior judgment awarding joint physical custody, ' "the best interests of the child" ' standard applies in any subsequent custody-modification proceeding. Ex parte Johnson, 673 So.2d 410, 413 (Ala. 1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988) ). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ' "it [is] in the [child's] best interests that the [judgment] be modified" ' in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala. Civ. App. 2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala. Civ. App. 1987) ).
Ex parte Blackstock, 47 So.3d at 804-05.
Since the entry of the most recent custody judgment, the mother relocated, in contravention of the trial court's order, to Georgia. That move interfered with the father's custodial periods. The trial court made comments during the ore tenus hearing indicating that it found that the mother had placed her interests above those of the child in moving the child away from the father and that it determined that the relocation had not been in the child's best interests.
"As this Court stated in Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996), quoted in part in Lamb [v. Lamb, 939 So.2d 918 (Ala. Civ. App. 2006) ], in an ore tenus proceeding,
" '[t]he trial court is in the best position to make a custody determination--it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ. App. 1993), set out the well-established rule:
" ' " 'Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, ... and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial *1186 court would be to reweigh the evidence. This Alabama law does not allow....' " '
" 676 So.2d at 1324 ; see Lamb, 939 So.2d at 922 ; see also Ex parte Foley, 864 So.2d 1094, 1099 (Ala. 2003) ('[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.' (citation omitted) )."
Ex parte Blackstock, 47 So.3d at 805.
Given the evidence in the record, the trial court's findings, and the applicable standard of review, we cannot say that the mother has demonstrated that the trial court erred in modifying custody of the child.
The mother also argues that the trial court erred in ordering her to pay child support. She bases her argument on appeal, at least in part, on her contention that the trial court lacked the authority to modify custody of the child. We have rejected that contention and have affirmed the custody award.
The trial court awarded the father sole physical custody of the child.
"The general rule is that a child has a fundamental right to be supported by his or her parents until he or she reaches the age of majority and that if the parents are divorced, the courts have the jurisdiction to require the non-custodial parent to pay a certain amount of child support and to modify the amount of child support required of the non-custodial parent until the child reaches the age of majority."
Wilson v. Hermanson, 655 So.2d 1071, 1072-73 (Ala. Civ. App. 1995). Given the mother's failure to demonstrate that the trial court erred in modifying custody, there is no error in the trial court's ordering the mother to pay child support for the benefit of the child.
The mother does not dispute on appeal that the child-support determination was calculated in compliance with the Rule 32, Ala. R. Jud. Admin., child-support guidelines, or allege that the trial court erred in determining the amount of her child-support obligation. Accordingly, any argument with regard to those issues is waived. See Boshell v. Keith, 418 So.2d 89, 92 (Ala. 1982) ("When an appellant fails to argue an issue in its brief, that issue is waived.").
The judgment of the trial court is affirmed.
AFFIRMED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

The record does not contain the date of the parties' divorce judgment. In at least one part of the record, the December 2013 judgment is referred to as the "divorce judgment," but the record indicates that the December 2013 judgment was entered some time after the parties divorced. In her appellate brief, the mother refers to the December 2013 judgment as a ".00 modification judgment." Regardless, it is undisputed that the December 2013 judgment was the most recent custody judgment and that the modification action currently at issue was designated in the trial court as a ".02" action.

That judgment specified that the change of custody would not occur until the end of the 2017-2018 school year so as not to disrupt the child's academic school year.