THOMAS, Judge.
Pamela Hubbard ("the mother") and James C. Hubbard ("the father") were married in New Jersey in April 2003. Thereafter, they moved to Shelby County.
*301 There are three children ("the children") of the marriage.
In 2013 the father filed a complaint in the Shelby Circuit Court seeking, among other things, a divorce from the mother and an award of custody of the children. The mother filed a counterclaim seeking, among other things, a divorce from the father and an award of custody of the children. In July 2013 the mother filed a protection-from-abuse ("PFA") motion in the circuit court. That motion was treated as having initiated a separate action and was assigned a separate case number. The mother alleged in the PFA motion that the father abused alcohol, had become "obsessed with firearms," had displayed threatening behavior, had verbally and emotionally abused her, and had committed various acts designed to terrorize her. The circuit court entered a PFA order, awarding, among other things, "primary" custody of the children to the mother.
In August 2013 the mother filed a motion in the divorce action seeking pendente lite relief, and the circuit court entered an order in October 2013 that, among other things, incorporated the parties' agreement that the father would exercise certain weekend and holiday visitation and provided that "[n]either party is to leave the state with the children." See § 30-3-160 et seq., Ala. Code 1975, the Alabama Parent-Child Relationship Protection Act ("the Act").
The parties filed numerous motions and responses in the divorce action, including the mother's November 4, 2013, motion that she styled: "Motion to Allow Mother and Children to Relocate to New Jersey." After a hearing, the circuit court entered a temporary order, addressing all the then-pending motions, and, in pertinent part, denying the mother's request to relocate the children to New Jersey. In May 2014 the mother filed a motion she styled: "Second Amended Motion for Contempt and Renewed Motion to Allow Mother and Children to Relocate to New Jersey." The mother asserted that she had experienced financial difficulties as a result of the father's alleged failure to comply with certain support orders, that she had a master's degree in education but was not licensed to teach in Alabama, that she had been "left destitute," and that she could support the children if the circuit court allowed her to relocate the children to New Jersey where, she said, they could live with her mother and she could obtain employment that would provide health insurance for the children. The children's guardian ad litem filed a motion in which she raised certain concerns regarding the father's alcohol consumption, and, in September 2014 the circuit court entered an order modifying the father's visitation to supervised visitation on two Saturdays per month, but only when he produced a negative alcohol screen.
On August 20, 2014, the circuit court held a trial. The father testified that he did not want the children to relocate 15 hours away from him, that he could not afford airfare to visit the children, that he would not be able to visit, that the children had family in Alabama, and that he loves the children. He testified:
"I think that being without a loving father who is there for them every single day, to play with them every day, to hang out has led into some issues. [The middle child] is developing a stutter. [The oldest child], who just turned seven, still sleeps in diapers at night and [the youngest child], he's a strong boy, and he needs a man in his life."
The mother testified that she would be willing to meet halfway between Alabama and New Jersey to exchange custody with the father; however, her testimony *302 revealed that, in general, she had not encouraged relationships between the children and the father or the children's paternal relatives. The mother said that the father's family had "made [her] life extremely difficult over the past couple of years." She said that they had not believed "what was going on in our household, and I got no help from [his] family." She testified that she feared that the father would someday verbally abuse the children; the father testified that he feared that the mother would someday kidnap the children.
The parents agreed that the children's school is a good school and that the children enjoy extracurricular activities in Calera. The mother testified that she managed all the children's daily activities-dressing, bathing, diapering, eating meals, and reading; the father testified that he enjoyed cooking, playing, watching movies, and visiting the children at school. The father said that, in Alabama, the children enjoyed various outdoor activities with their paternal cousins. The mother testified that the children have maternal and paternal relatives in New Jersey and Pennsylvania, that New Jersey schools are "great," and that her mother's four-bedroom house is near a library and a community center.
The mother testified that she worked two jobs and that she was seeking employment in the Shelby County school system. According to the mother, the uncertainty regarding whether she would receive support from the father had rendered her unsure as to whether she could "survive" in Alabama. She said that she received various forms of government assistance and that she had incurred medical bills because the father had canceled the family's health-care insurance without her knowledge. She denied that she had refused to become certified to teach in Alabama or to make payments on the marital residence or her automobile so that she could claim that she needed to relocate to New Jersey. She offered testimony intended to demonstrate that the father abused alcohol everyday and that he had left firearms within the reach of the children. She offered a number of audio recordings into evidence that demonstrated that, when the parties argued, the father called her crude and profane names in the presence of the children.
When asked how relocation to New Jersey would benefit the children, the mother said:
"The rent or mortgage would be nonexistent. I have a place to live [with the mother's mother]. I wouldn't have any house expenses. I would contribute a little bit to some utilities. I would mostly pay for my groceries and anything that has to really do with the children and myself and it would really help a lot to know that I could come home and the lights would be on instead of whether or not they are going to be on.
"....
"I will have a place to live. I already have my certification [to teach] in New Jersey. I will be able to get a full-time job. I do not need to take any courses for substitute teaching. Down here, I have to take a course which I have, I do have. I have help. My recently widowed mother, I will be living with her. And my friends and family are up there and they have offered their help in any way that they can to make sure that my children and I are taken care of.
"And I know I can get a good job. I still have contacts. I have a network of teacher friends and supervisors that are still in New Jersey and some have moved districts but that just gives me a bigger opportunity to look at other districts."
*303 The following exchange occurred during the cross-examination of the father:
"Q. How do you expect [the mother] to stay here ... in the Alabama area if you are not providing her with any support?
"A. She's-there has been plenty of support. It's just been lately that I've had to bump, you know.
"Q. Sir, your house is in foreclosure. You testified that y'all have a ton of debt. You're not paying current child support. How do you expect her to survive and pay for things for your children, have a roof over their head, food to feed them, money to pay medical bills, enroll them in school if you are not paying any support to her? How do you expect her to stay here in Alabama and survive?
"A: I will just have to do better. I don't see how the alternative is better."
On October 20, 2014, the circuit court entered a judgment divorcing the parties and, in pertinent part, awarding sole legal custody and "primary" physical custody of the children to the mother, subject to the father's right to supervised visitation. The circuit court denied the mother's request for permission to relocate the children to New Jersey. The October 20, 2014, judgment was not a final judgment. The circuit court specifically reserved "all issues not addressed herein," which included a property division, because, at that time, the parties were each contemplating filing for bankruptcy.
The parties filed separate motions seeking reconsideration of the October 20, 2014, judgment. In her motion for reconsideration, the mother argued that the circuit court had abused its discretion by denying her request for permission to relocate the children to New Jersey. The mother argued that the circuit court had misapplied the rebuttable presumption that relocation is not in the best interest of a child.[1] She also argued:
"The primary reason why the relocation is in the best interest of the minor children is a financial one. The testimony at trial showed that the [mother] is actively seeking more gainful employment but is hindered by current licensing requirements in [Alabama], limited openings given the time of year and financial limitations related to the ages and child[-]care needs of the children as well as the [father's] spotty payment of child support and absolute refusal to pay alimony as ordered by the Court. While the financial award in terms of child support and alimony set by the Court could help alleviate some of those financial concerns, the [father,] by both his past and current conduct[,] has made clear that the payment of his Court ordered child[-]support and alimony obligations are not his primary concern and that under no circumstances has he or will he pay alimony. Both parties have filed bankruptcy and the marital home will soon be foreclosed. When this occurs the [mother] and the minor children will have no place to live. The [mother] will be unable to provide suitable housing, food and clothing for the minor children with the [father's] refusal to pay alimony, *304 his uncertain and untimely payment of child support and the money she is currently earning. The [mother] will be left to provide for herself and three young children earning only minimum wage with take-home pay of less than S1,000.00 per month. As presented at trial, the bare minimum to support the minor children will significantly exceed that amount. Even if the [father] was timely in his payment of child support (which he has not been), $2,000.00 a month will not support this family. The best interests of the minor children could not possibly be to suffer in poverty when they could relocate with the mother to New Jersey where their basic needs would be provided by the maternal grandmother while the [mother] seeks gainful employment in a better job market, with higher income and with the connections necessary to get a job in the existing school system. Leaving the children in their current financial predicament is clearly not in their best interests."
At the January 20, 2015, hearing on the motions for reconsideration, the father's attorney argued that the mother had not availed herself of opportunities to become employed in Alabama because, she argued, to do so would negatively impact the mother's "goal" of relocating the children to New Jersey. The father's attorney argued:
"I think this Court heard evidence that [the mother] has no intention of working with or coparenting with [the father] even when they lived in the same county much less when they are thousands of miles away and with the small incomes of both parties that there would be no visitation practically for [the father] and his children and for him to have an active part in his children's life. So I think the Court was looking at the interest of the children versus that of the parents.
"....
"[The mother] certainly has the ability to make more than minimum wage but she has chosen not to to claim impoverishment so you should let her go to New Jersey so her mom can pay for everything."
The circuit court entered a modified judgment on February 18, 2015, which reads, in pertinent part:
"In denying the [mother]'s request for relocation of the minor children to New Jersey, the Court [incorrectly] applied a rebuttable presumption that such relocation would not be in the best interest of the children. Subsequent to the hearing of January 20, 2015, the Court has reweighed all of the evidence and testimony it had before it when the ... Judgment of Divorce was entered, this time without indulging the presumption. In making this revised custody determination, the Court has endeavored to arrive at a custody determination that is in the best interest of the children. The Court has considered all factors affecting the children, including (but not limited to) those set out in Section 30-3-169.3, Code of Alabama, and hereby finds that relocation of the minor children would not be in the best interests of the minor children. As this is the same result the Court reached when applying the earlier standard, the custody and relocation provisions in the ... Judgment of Divorce shall remain undisturbed."
Because the parties had been engaged in separate bankruptcy actions, 17 months passed before the circuit court entered a final judgment on July 5, 2016. On August 3, 2016, the mother filed a postjudgment motion. The mother incorporated the arguments included in her November 19, 2014, motion for reconsideration and argued, for the first time, that the circuit court had *305 violated her constitutional rights by denying her request to relocate the children to New Jersey. The circuit court held a hearing at which the mother's attorney failed to advance a constitutional argument except to mention that the mother intended to appeal the denial of her request to relocate the children to New Jersey because the mother "really [is] blocked from moving from" Alabama. The children's guardian ad litem said:
"[T]hese parents are unable to communicate and co-parent or anything. I think testimony showed they were meeting at a police station [and] couldn't talk to each other. Mom didn't even list paternal grandparents-and maybe not Dad-as an emergency pickup at school.
"So I just don't see any way they could effectively work together on [out-of-state visitation]. I think it's just in the best interest of the children to have a relationship with their father."
The mother's postjudgment motion was denied by operation of law, and she filed a timely notice of appeal seeking this court's review of whether the circuit court erred by denying her request to relocate the children to New Jersey.
" 'The judgment was issued based upon ore tenus proceedings. Where the trial court's findings are based on evidence received ore tenus,
" ' " '[o]ur standard of review is very limited.... A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, ... and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow.' "
" ' Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994) (citations omitted) (quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ. App. 1993) ). "It is our duty to affirm the trial court's judgment if it is fairly supported by credible evidence, 'regardless of our own view of that evidence or whether we would have reached a different result had we been the trial judge.' " Griggs v. Griggs, 638 So.2d 916, 918-919 (Ala. Civ. App. 1994) (quoting Young v. Young, 376 So.2d 737, 739 (Ala. Civ. App. 1979) ).'
" Sankey v. Sankey, 961 So.2d 896, 900-01 (Ala. Civ. App. 2007)."
Larue v. Patterson, 163 So.3d 356, 358-59 (Ala. Civ. App. 2014).
The mother argues that the application of the 17 factors provided in § 30-3-169.3(a), Ala. Code 1975, should have resulted in a grant of her request to relocate the children. In Lackey v. Lackey, 18 So.3d 393, 399 (Ala. Civ. App. 2009), we explained:
"Section 30-3-169.7., Ala. Code 1975, ... a part of the Act, provides that, when, as in this case, the issue of relocation is presented in conjunction with an initial custody determination, 'the court shall consider ... the factors set forth in Sections 30-3-169.2. and 30-3-169.3.[, Ala. Code 1975,] in making its initial determination.' "
(Footnote omitted.) In her brief, the mother recounts all the evidence presented and asserts public-policy arguments that might inure in her favor regarding the 17 factors. The circuit court made no specific findings of fact, and the Act does not require such findings. See Clements v. Clements, 906 So.2d 952, 957 (Ala. Civ. App. 2005). In the absence of specific findings of fact, " 'this court must assume that the trial court *306 made those findings necessary to support its judgment.' " Id. (quoting Steed v. Steed, 877 So.2d 602, 603 (Ala. Civ. App. 2003) ).
Depending upon its credibility determinations, the circuit court reasonably could have found in favor of either party on the issue of relocation.
" 'It was within the province of the trial court to consider the credibility of the witnesses, to draw reasonable inferences from their testimony and from the documentary evidence introduced at trial, and to assign such weight to various aspects of the evidence as it reasonably may have deemed appropriate.... In order to reverse the trial court ..., we would have to make our own credibility determinations and we would have to reweigh the evidence, neither of which we are allowed to do.' "
Vestlake Cmtys. Prop. Owners' Ass'n v. Moon, 86 So.3d 359, 367 (Ala. Civ. App. 2011) (quoting Miller v. Associated Gulf Land Corp., 941 So.2d 982, 990 (Ala. Civ. App. 2005) ).
The evidence presented placed the father in a bad light; however, it is the policy of our state to value close and frequent contact between children and both parents. § 30-3-150 & § 30-3-160. The testimony presented supports a conclusion that neither parent could regularly bear the cost of transportation for visitations if the children relocated to New Jersey, and the children's guardian ad litem said that it was not the children's best interest to relocate. The distance between New Jersey and Alabama would make visitation difficult and expensive and would have negatively impacted the amount of contact the father would have with the children; thus, we conclude that there was a sufficient basis for concluding that relocation was not in the children's best interest. See Meadows v. Meadows, 3 So.3d 221, 230-31 (Ala. Civ. App. 2008).[2]
Based on the foregoing, it is clear that we could have affirmed a judgment granting or denying the mother's request for permission to relocate the children to New Jersey; accordingly, we conclude that the mother has failed to demonstrate that the circuit court committed reversible error.
AFFIRMED.
Pittman and Donaldson, JJ., concur.
Thompson, P.J., and Moore, J., dissent, with writings.
I believe that the evidence presented in this case does not support the trial court's judgment denying the request of Pamela Hubbard ("the mother") to relocate, with the parties' children, to New Jersey.
As the main opinion states, this case involves the initial custody determination between these parties. Therefore, § 30-3-169.4, Ala. Code 1975, a part of the Alabama Parent-Child Relationship Protection Act ("the Act"), § 30-3-160 et seq., Ala. Code 1975, which applies only to a "change of the principal residence" of a child whose custody has already been determined by a court order, see § 30-3-161(1), Ala. Code 1975, is not applicable to this case. Lackey v. Lackey, 18 So.3d 393, 399 (Ala. Civ. App. 2009).
*307 In Lackey, the court explained that situations like the one at bar, where one parent wants to relocate with the children at the time of an initial custody determination incident to a divorce, are governed by § 30-3-169.7, Ala. Code 1975, also a part of the Act. The court wrote that § 30-3-169.7"provides that, when, as in this case, the issue of relocation is presented in conjunction with an initial custody determination, 'the court shall consider ... the factors set forth in Sections 30-3-169.2 and 30-3-169.3[, Ala. Code 1975,] in making its initial determination.' " Lackey, 18 So.3d at 399 (footnote omitted). Thus, when determining whether the mother could relocate to New Jersey with the children, § 30-3-169.7 required that the trial court consider the factors set forth in § 30-3-169.3. Those factors include:
"(1) The nature, quality, extent of involvement, and duration of the child's relationship with the person proposing to relocate with the child and with the non-relocating person, siblings, and other significant persons or institutions in the child's life.
"(2) The age, developmental stage, needs of the child, and the likely impact the change of principal residence of a child will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
"(3) The increase in travel time for the child created by the change in principal residence of the child or a person entitled to custody of or visitation with the child.
"(4) The availability and cost of alternate means of communication between the child and the non-relocating party.
"(5) The feasibility of preserving the relationship between the non-relocating person and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
"(6) The preference of the child, taking into consideration the age and maturity of the child.
"(7) The degree to which a change or proposed change of the principal residence of the child will result in uprooting the child as compared to the degree to which a modification of the custody of the child will result in uprooting the child.
"(8) The extent to which custody and visitation rights have been allowed and exercised.
"(9) Whether there is an established pattern of conduct of the person seeking to change the principal residence of a child, either to promote or thwart the relationship of the child and the non-relocating person.
"(10) Whether the person seeking to change the principal residence of a child, once out of the jurisdiction, is likely to comply with any new visitation arrangement and the disposition of that person to foster a joint parenting arrangement with the non-relocating party.
"(11) Whether the relocation of the child will enhance the general quality of life for both the custodial party seeking the change of principal residence of the child and the child, including, but not limited to, financial or emotional benefit or educational opportunities.
"(12) Whether or not a support system is available in the area of the proposed new residence of the child, especially in the event of an emergency or disability to the person having custody of the child.
"(13) Whether or not the proposed new residence of a child is to a foreign country whose public policy does not normally enforce the visitation rights of *308 non-custodial parents, which does not have an adequately functioning legal system, or which otherwise presents a substantial risk of specific and serious harm to the child.
"(14) The stability of the family unit of the persons entitled to custody of and visitation with a child.
"(15) The reasons of each person for seeking or opposing a change of principal residence of a child.
"(16) Evidence relating to a history of domestic violence or child abuse.
"(17) Any other factor that in the opinion of the court is material to the general issue or otherwise provided by law."
§ 30-3-169.3(a).
In the present case, the evidence indicates that the mother and James C. Hubbard ("the father") met and married in New Jersey. The father testified that, about four years after they married, the parties moved to Shelby County. Although, at the time of trial, the father had extended family in Alabama, both parties also had numerous relatives still living in New Jersey. The mother had a license to teach school in New Jersey, and she had done so during the first years of the marriage. The mother was pregnant when she moved to Alabama. From the time the parties' first child was born, the mother was a "stay-at-home mother" and did not obtain a license to teach in Alabama. That meant that the mother could not work as a teacher in this state without first becoming certified here.
The evidence is uncontradicted that the father failed to pay the mother the amount ordered as pendente lite support. In the divorce judgment of October 20, 2014, the trial court found that the father was $2,013.16 in arrears on his child-support obligation and $9,000 in arrears as to his spousal-support obligation. After the parties separated, the mother had been able to obtain jobs in retail and said she was continuing to look for other employment. However, she said, she was having difficulty making ends meet. At the time of the trial, the mother said, she was working two jobs and receiving government assistance such as food stamps, free lunch programs, and the nutrition program for Women Infants and Children, known as WIC, to provide for the children and herself.
The father contends that he cannot afford the child-support and alimony payments he was ordered to pay. The father also stopped paying the premiums for the children's health insurance that the trial court had ordered him to pay. The mother asserted that the father's drinking has caused him to lose customers, which cost him money. The evidence indicated that the father had abused alcohol in front of the children. The children's guardian ad litem expressed concern over the father's alcohol abuse. In fact, the father was forced to admit at a hearing that he had been drinking before coming to court.
The record also demonstrated that the father was verbally abusive toward the mother and had used threatening language toward her. As the main opinion points out, the mother obtained a protection-from-abuse order against the father after alleging that the father abused alcohol, had become "obsessed with firearms," had threatened the mother, had verbally and emotionally abused the mother, and had committed various acts designed to terrorize her. Recordings of the father and the mother that were played in open court corroborate the mother's assertions that the father was verbally abusive and threatening. In one of the recordings, the children can be heard either in the room or nearby as the father yells at the mother about her wanting money to buy the children shoes, yells at her to "shut the f*** up," calls her filthy names, and attempts to belittle and intimidate her. In fact, the *309 father's treatment of the mother in the recordings is among some of the worst verbal abuse of a spouse I have heard in my years on this court.
The week before the trial of this matter, the mother received notice that the mortgage holder for the loan on the marital residence, where she lived with the children, was about to foreclose on that house. The mother testified that she had no other place to live. Without financial assistance from the father, the mother said, she could not afford to continue to live in Alabama.
The mother testified that if she could relocate to New Jersey, she would be able to live with her mother in an area with "great" schools. She said that she would be able to obtain more lucrative employment than she can obtain in Alabama, even if she were to become certified to teach in this state. The children would be near both maternal and paternal relatives, and, the mother said, she would have family and friends to assist her. The father objected to the mother's relocation, citing the distance between his house in Alabama and where the children would live in New Jersey. He said he could not afford airfare to visit.
Ideally, children should be raised by both parents, but sometimes circumstances render such an arrangement untenable. This case illustrates such circumstances. As the main opinion states, "[t]he evidence presented placed the father in a bad light." 257 So.3d at 306. The father is unwilling or unable to meet his financial obligations to support the children, to provide them with the means to shelter them, and to ensure that they have health insurance. I fail to see how it is in the children's best interest to prevent them from moving with the mother to a place where they will have a house in which to live and where the mother has a support system, networking opportunities, and realistic hopes of obtaining the best job for which she is qualified.
In considering the factors in § 30-3-169.3(a), I believe that the mother's reasons for requesting the relocation far outweigh the father's reasons for objecting to the relocation. I also believe that the evidence does not support the trial court's decision to deny the mother's request to relocate with the children to New Jersey and that, therefore, the judgment is plainly and palpably wrong. Because I would reverse the trial court's judgment, I dissent from the main opinion.
I agree with Presiding Judge Thompson that "the evidence presented in this case does not support the trial court's judgment denying the request of Pamela Hubbard ('the mother') to relocate, with the parties' children, to New Jersey." 257 So.3d at 306 (Thompson, P.J., dissenting). The evidence indicates that James C. Hubbard ("the father") cannot or will not financially support the mother and their children so that they can maintain even a minimal standard of living by remaining in Alabama. Without appropriate financial aid from the father, the mother, at the time of the trial, had taken on two jobs in a struggle to provide for the children, but she faced the possibility of losing her home to foreclosure. The mother was depending on governmental aid to provide necessities for the children, and that dependence will only escalate when the family loses its shelter.
The evidence discloses that the children would be provided a suitable home and financial security if they were allowed to relocate to New Jersey. It is entirely speculative whether the mother can obtain a teaching certificate and sufficiently lucrative employment in Alabama to sustain the children, but the evidence is undisputed that, if she relocates to New Jersey, she can. In the interim, the basic needs of the children can be met while living with their maternal grandmother in New Jersey.
*310 The relocation will undoubtedly prevent much meaningful interaction between the children and the father. The Shelby Circuit Court ("the trial court") obviously determined that the father's relationship with the children should be preserved because the record discloses no other possible ground for denying the relocation petition. A father-child relationship is indeed a sacred bond that a court should interfere with only in the most compelling of circumstances. In this case, the evidence in the record shows that, in order to preserve the existing relationship with the father, the children will be forced into an unstable living environment of government dependence. This case exhibits precisely the sort of compelling circumstances that require a court to allow a custodial parent to relocate for the best interests of the children involved despite the impact on the relationship between the children and the noncustodial parent.
In my opinion, the evidence in the record, being undisputed on most major points, does not justify the conclusion reached by the trial court. Therefore, I respectfully dissent from the main opinion's affirmance of the trial court's judgment.

"The question whether the rebuttable presumption in § 30-3-169.4[, Ala. Code 1975,] is applicable to an initial custody determination is an issue of first impression. We initially note that the language of § 30-3-169.4 applies only to a 'change of principal residence,' which is defined in § 30-3-161(1), Ala. Code 1975, as '[a] change of the residence of a child whose custody has been determined by a prior court order.' (Emphasis added.) Accordingly, we conclude that, by its plain language, § 30-3-169.4 is not applicable to an initial custody determination."
Lackey v. Lackey, 18 So.3d 393, 399 (Ala. Civ. App. 2009).

We need not address the mother's vague assertions in her summary-of-the-argument section of her appellate brief that she has suffered a violation of her constitutional rights. The mother has neither presented a legal argument nor cited any supporting authority regarding that issue in the argument section of her brief. See Rule 28(a)(10), Ala. R. App. P.